WHITE vs. THE MILWAUKEE CITY RAILWAY COMPANY.

*November 11 — November 25, 1884.*

*(1) Street railways: Negligence: Track at swing-bridge: Fast driving.
(2) Injuries to person: Examination by physician at trial. (3)
Damages for permanent disability.*

1. Upon a street railway, a separate track was used for the cars going in each direction, and frogs were so placed as to prevent cars *going in the proper direction* from being thrown from the track while going upon or leaving a swing-bridge. A loaded wagon having broken down on the bridge on one of the tracks, a car approaching thereon was necessarily lifted to the other track and, being then driven rapidly upon the bridge, was thrown from the track, injuring a passenger. *Held,* that the company was not negligent in not placing frogs so as to prevent a car thus *going in the wrong direction* upon the track from being thrown off; but that the question whether the speed with which the car was driven upon the bridge was not, under the circumstances, negligent, was for the jury.

White vs. The Milwaukee City R'y Co.

2. In an action for personal injuries the court may, in a proper case, at the trial, direct the plaintiff to submit to a personal examination by physicians on behalf of the defendant.

3.. To justify the assessment of damages for future or permanent disability it must appear that continued or permanent disability is *reasonably certain* to result from the injury complained of.

APPEAL from the County Court of *Milwaukee* County.

This action was brought by the plaintiff to recover damages for personal injuries alleged to have been received by her through the negligence of the defendant company, its agents and servants, while riding in one of its street-cars.

The 'facts of the case are briefly as follows: The defendant operates two tracks of street railway, running north and south on East Water and Reed streets, in the city of Milwaukee.   These streets abut each other at the Menominee river, and are connected by a swing-bridge across that river near the Union depot.   The tracks are laid upon the bridge.   The west track is used exclusively for cars going south, and the east track for those going north.   At the time of the injury, the plaintiff was a passenger in one of the cars of the defendant going north on the east track on Reed street, which is the street south of the river.   A loaded wagon had broken down on the bridge and obstructed that track.   The car in which the plaintiff was riding was safely and properly removed to the west track, and just as it was driven upon the bridge the forward wheels left the track. The jolt of the car caused thereby threw the plaintiff from her seat and caused the injury complained of, which was a bruise of one of her limbs below the knee.

The ends of the rails of the west track on the south abutment next the bridge were constructed with frogs, which seem to be nothing more than a widening of the rails at the ends.   There were also frogs on the ends of the rails on the bridge next the north abutment thereof.   The same rail was used on the east track, the frogs being upon the ends of the

rails on the north abutment, and on the bridge next the south abutment. Thus it will be seen that whichever way the bridge was turned the location of the frogs was the same. The purpose of these frogs was to overcome the disturbance of the rail by the swaying of the bridge, and to keep the car-wheels on the track when they should strike the bridge or the abutment, although the track might be out of line. It will thus be seen that no precautions were employed in the construction of the tracks with reference to a car running, as did this car, north on the west track.

The testimony given on the trial tends to show that the car was being driven rapidly when it jumped the track. In answer to the question, "What caused said car to leave the track and strike the arch of the bridge?" the jury answered, "Fast driving, and the absence of a frog on the west track of the bridge." The jury also found the defendant was negligent and the plaintiff was not; that the plaintiff sustained temporary injury to the right leg, which may prove permanent; and assessed her damages at $650. A motion for a new trial was denied, and judgment entered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief signed by *E. P. Smith, Rogers & Mann*, attorneys, and *J. M. Pereles*, of counsel, and the cause was argued orally by *Mr. Smith*.

*R. K. Adams*, for the respondent.

Lyon, J. I. It is claimed on behalf of the defendant that no sufficient evidence was given upon the trial to support the finding that the defendant was guilty of negligence which caused the injuries complained of.

We do not think that negligence can be imputed to the defendant by reason of the manner in which it constructed its railway. The track seems to have been laid in

the usual and proper manner, and the frogs placed in the proper positions to keep the cars upon the track when they passed the bridge. In view of the direction in which the cars were moved on the respective tracks, it would be unreasonable to require the defendant to construct its tracks to guard against a contingency such as occurred in the present case. Moreover, it does not appear that the company, in this respect, has violated any of the requirements of its charter, or any order or direction of the authorities of the city of Milwaukee.

It is obvious, however, that a car passing north on the west track from the south abutment to the bridge (as was the car in question) would be much more liable to leave the track than one going in the opposite direction on the same track. This fact would render it the duty of the servants of the defendant in charge of the car to exercise more caution to keep the car on the track than would be required were it moving in the opposite direction. Manifestly the most effectual precaution that could be used to keep the car on the track, or, at least, to prevent injury to passengers if it left the track, would be to drive slowly from the abutment to the bridge. The testimony in the case, although conflicting, tends to show that this car was driven rapidly at that point. Whether moving the car at such a rate of speed was or was not negligence, is peculiarly a question of fact for the jury. The finding in that behalf is supported by the evidence. We conclude, therefore, that there was no error in submitting the question of defendant's negligence to the jury, and the verdict on that question cannot be disturbed.

II. The testimony of the plaintiff and some of her witnesses tends to show that at the time of the trial she had not recovered from the effect of the injuries; that her limb was not then in a normal condition; and that the effect of such injuries would or might be permanent. She testified that five physicians had examined her limb, among whom

was Dr. Hare. During the trial counsel for the defendant made the following request, and the following proceedings were thereupon had: "*Defendant's counsel:* We ask of the court to direct the plaintiff, who is now present, to submit her limb for examination in a private room attached to the court-room, privately, to Drs. Senn and Hare, who are now present, and that if she wish she can be accompanied by any of her own female friends who are present, or any other physician whom she chooses. *Court:* I do not see anything improper in the request, but I do not think I have any authority to compel a suitor to submit, in a case of this kind, to any examination against his or her will; I therefore refuse the application. Defendant excepts. Plaintiff's counsel says: 'The plaintiff herself declines to have the examination in the absence of her physician, who, as her attorney is informed and believes, has left the city since he has been on the witness stand.'"

It will be seen that the court denied this request on the sole ground that he had no authority to compel the plaintiff to an examination against her will. On principle and authority we are satisfied that this was error. The then condition of the injured limb had a most important bearing upon the question as to whether the plaintiff's injuries were permanent, and an examination at that time, the results of which would have been put in evidence before the jury, would in all probability have greatly aided them in determining the extent and consequences of the injury. It would be, or might have been, more satisfactory and conclusive evidence on that subject than the statements of the plaintiff, or the opinions of the medical witnesses. The application for her examination contained in it every reasonable safeguard against offending the modesty or delicacy of the plaintiff, and although she might shrink from the examination, yet the ends of justice imperatively demanded that she submit to it. Such examinations are frequently ordered by courts in cases

of divorce for impotency, and in cases of alleged pregnancy, and the authority of the court to order them has never been questioned, so far as we are advised.

In *Walsh v. Sayre*, 52 How. Pr. 334, the power of the court in a proper case to order a personal examination is asserted, and it is there said that it rests upon the same principle as does the power to compel the discovery of books, papers, and documents, the difference being that in a case like this the principle extends to *things* or *substances* as well. *Schroeder v. C., R. I. & P. R. Co.* 47 Iowa, 375, is to the same effect. The opinion of BECK, J., in that case, and of JONES, J., in *Walsh v. Sayre, supra,* contain very able and satisfactory discussions of this question.

It is said by the learned counsel for the plaintiff that it rests in the sound discretion of the court to order or refuse an examination. Perhaps it does. But that discretion has not been exercised here. The court expressly denied the application because of alleged want of power to grant it. We hold that in a proper case the court has power to order an examination, and that this is a proper case in which to exercise it.

III. It has already been stated that to the question, "What injury did the plaintiff sustain, if any, by such accident?" the jury answered: "Temporary injury to the right leg, which may prove permanent."

This is but little, if anything, more than a finding that the injury may possibly be permanent. A mere possible continuance of disability by reason of an injury is not a proper element of damages. To justify the jury in assessing damages for future or permanent disability, it must appear by the proofs that continued or permanent disability is reasonably certain to result from the injury complained of. It is fair to assume that the jury predicated their assessment of damages in part upon the possibility of permanent injury. This also is error.

Other errors were assigned and argued by counsel, but as the above views are decisive of the case it is unnecessary to consider them.

*By the Court.*— The judgment of the county court is reversed, and the cause will be remanded for a new trial.