Sibley, Receiver, et al. v. Smith.

---

SIBLEY, RECEIVER, ET. AL. V. SMITH.

1. PRACTICE: *Discovery. Personal examination of party for personal injury.*

Where a plaintiff in an action for personal injuries alleges that they are of a permanent nature, the defendant is entitled, as a matter of right, to have the opinion of a surgeon upon his condition, based upon personal examination; and the court should, upon demand of the defendant, compel the plaintiff to submit to such examination. But where the evidence of experts is already abundant, the court must exercise its sound discretion in compelling or refusing the examination; and its action is subject to review in case of abuse.

APPEAL from *Prairie* Circuit Court.

Hon. M. T. SANDERS, Circuit Judge.

*U. M. & G. B. Rose* for appellant.

*First*—The court erred in refusing to require plaintiff to submit to an examination of his person by competent experts. *47 Iowa, 375; 60 How. Pr., 143; 24 Am. Law Reg., 527; 29 Kans., 466; S. C., 44 Am. Rep., 659.* The rule deduced from these cases is, that where the plaintiff in an action for permanent injuries alleges that they are of a permanent nature, the defendant is entitled, as a matter of right, to have the opinion of a surgeon upon his condition—an opinion based upon personal examination. If expert testimony has already been introduced, it is within the sound discretion of the court to order the examination.

*J. M. Rose* also for appellant.

*S. P. Hughes*, for appellee.

The court below held that there was no *necessity* for a personal examination, and that it had no power to order it. Such an examination is in the sound discretion of the court, and was properly exercised here. *53 Mo., 515; 24 Am. Law Reg., 527.*

Argues upon the merits.

SMITH, J. Sandy Smith sued the receiver of a railroad corporation to recover damages for being forcibly ejected from a moving train. His complaint alleged severe external and permanent internal injuries, and he recovered a verdict and judgment for $2000.

The testimony for the plaintiff tended to show that he was a colored man, above sixty years of age—one of a party of emigrants that included his wife and step-children,

besides others; that they had bought tickets from Dyersburg, Tenn., to Surrounded Hill, in this state; that after leaving Memphis on the road operated by the defendant, it being now dark, the conductor demanded the plaintiff's ticket, which was surrendered; but the conductor said it was not good, although the rest of the party were permitted to ride on similar tickets, purchased at the same time and place; that the plaintiff had been compelled, by threats and intimidation, to jump off the train, and was thrown to the ground with great violence, sustaining contusions upon the head, right arm, shoulder and hip, and also being internally hurt, evidenced by frequent hemorrhages, and derangement and obstruction of the bowels; and that his health and capacity to labor had been seriously impaired by the fall. It did not appear that any medical man had been called in, until a long time after the injury was received; nor was any medical testimony given as to the nature and extent of the injuries.

After the plaintiff had rested, the defendant moved the court that the plaintiff be required to submit to an examination of his person by experts chosen in equal numbers by the parties, whose fees the defendant offered to pay, with a view to ascertain the character, extent and permanency of the plaintiff's hurts. This motion was denied.

The earliest reported case on this subject, to which our attention has been called, is *Walsh v. Sayre, 52 Howard's Practice Rep., 334,* decided by the superior court of New York in 1868. That was an action for malpractice against a surgeon, it being alleged that he had unskillfully performed an operation on the plaintiff, a child of seven years. The defendant asked that the plaintiff be required to appear and submit to a personal inspection of the affected part by himself and such other competent surgeons as he might name, under the direction of a referee to be appointed for

that purpose.   And it was held that the power of the court in the premises was analagous to the power to compel the discovery of books, papers and documents, in a case where a party to the litigation, knowing or having the means of knowing material facts, seeks to obtain an undue advantage by withholding and concealing the sources of information.   And the judge who delivered the opinion after adverting to the natural delicacy which disposes the mind to shrink from such an examination, when the discovery asked is of a portion of the human body, proceeds to show that such investigations are not unusual in cases of mayhem, of divorce for impotency, and of alleged pregnancy.

This case was approved in *Shaw v. Van Rensselaer, 60 Howard's Pr. Rep., 143.*   And the right of the court to order an examination, in an action for personal injuries, was considered unquestionable in *Harrold v. N. Y. R. Co., 1 Hun., 268.*

An important authority upon the subject is the case of *Schroeder v. C. R. I. & P. P. Rd. Co., 47 Iowa, 375.*

Upon this question the court says:

"The issues of the case involved the extent of the injuries inflicted upon the plaintiff, and their effect upon his health and strength.   He testified upon the first trial that he was so far disabled that he could not engage in labor requiring the exercise of common strength and activity. The testimony was to the effect that his hip and back were the seat of great pain, that the injuries had impaired his nervous system, and that his limbs and some of his internal organs were, to an extent, paralyzed.

"After the jury were impanelled, and before the introduction of any testimony, the defendant filed a written application asking that a proper order of the court be made, requiring the plaintiff to submit to an examination by physicians and surgeons, that they might determine the

true condition of his health, and the character and extent of his ailments, to the end that it might be known whether, indeed, he was suffering from any disability, and, if so found, whether it originated from the injuries sustained by the timbers falling upon him, as claimed by him in his petition and testimony. The defendant in its application asked that such an examination should be made by a proper number of physicians, to be selected, in equal numbers, by plaintiff and defendant, and it was proposed by the defendant that its own medical officer should not be one of the number, and that the expenses of such an examination would be paid by the defendant.

" Whoever is a party to an action in a court, whether a natural person or a corporation, has a right to demand therein the administration of exact justice. The right can only be secured and fully respected by obtaining the exact and full truth touching all matters in issue in the action. If truth be hidden, injustice will be done. The right of the suitor, then, to demand the whole truth, is unquestioned ; it is the correlative of the right to exact justice.

   *     *     *     *     *     *

" To our minds the proposition is plain that a careful examination by learned and skilled physicians and surgeons would have opened a road by which the cause could have been conducted nearer to exact justice than in any other way. The plaintiff, as it were, had under his own control testimony which would have revealed the truth more clearly than any other that could have been introduced. The cause of truth, the right administration of the law, demand that he should have produced it.

   *     *     *     *     *     *

" But it is urged that the court was clothed with no power to enforce obedience of the plaintiff had such an order

been made. Its power, in our judgment, was amply suffi-- cient to coerce obedience. The plaintiff would have been ordered by the court, by submitting his person to exami- nation, to permit the introduction of testimony in the case. His refusal would have been an impediment to the administration of justice, and a contempt of the court's authority. He would have been subject to punishment as a recusant witness who refused to answer proper questions. propounded to him. Should such recusancy too long delay the court, or prove an effective obstruction to the progress. of the case, the court could have stricken from the plead-- ings all the allegations as to permanent injury, and with- drawn from the jury that part of the case. The plaintiff,. by voluntarily withdrawing his claim for such injury, would have been relieved from the necessity of such examination, and proceedings as for contempt would have been sus- pended. When it is remembered that plaintiff was a wit- ness before the court, that the examination of his person would have had the effect to elicit testimony from him, the power of the court over him is readily understood.

"It is said that the examination would have subjected him to danger of his life, pain of body, and indignity to his person. The reply to this is, that it should not, and the court should have been careful to so order and direct. Under the explicit directions of the court, the physicians should have been restrained from imperiling, in any degree, the life or health of the plaintiff. The use of anæsthetics, opiates, or drugs of any kind, should have been forbidden,. if, indeed, it had been proposed, and it should have been prescribed that he should be subjected to no tests painful in their character. As to the indignity to which an exami- nation would have subjected him, as urged by counsel, it is. probably more imaginary than real. An examination of the person is not so regarded when made for the purpose-

of administering remedies. Those who effect insurance upon their lives, pensioners for disability incurred in the military service of their country, soldiers and sailors enlisting in the army and navy, all are subjected to rigid examinations of their bodies, and it is never esteemed a dishonor or indignity. The standing and character of the physicians who should have been appointed to make the examination would not only have secured the plaintiff from insult, or indignity, but would have been a guaranty that nothing would have been attempted which would have endangered his life or health.

\*        \*        \*        \*        \*        \*

"It is the practice of the courts of this state, sanctioned by more than one decision of this court, to permit plaintiffs who sue for personal injuries to exhibit to the jury their wounded or injured limbs, in order to show the extent of their disability or suffering. If for this purpose the plaintiff may exhibit his injuries, we see no reason why he may not, in a proper case and under proper circumstances, be required to do the same thing for a like purpose upon the request of the other party. If he may be required to exhibit his body to the jury, he ought to be required to submit it to examination of competent professional men."

*White v. Milwaukee City Ry. Co. 61 Wis., 536, S. C. 24 Am. Law Reg., 527*, was an action for personal injuries by a female. The defendant moved for an examination of the plaintiff's person by competent physicians, and the application was refused, the judge remarking that he had no authority to grant the order.

The Supreme Court of Wisconsin thereupon use the following language:

"It will be seen that the court denied this request on the sole ground that it had no authority to compel the

plaintiff to submit to an examination against her will. On principle and authority we are satisfied this was error. The then condition of the injured limb had a most important bearing upon the question whether the plaintiff's injuries were permanent, and an examination at that time, the results of which would have been put in evidence before the jury, would in all probability have greatly aided them in determining the extent and consequences of the injury. It would, or might have been, more satisfactory and conclusive evidence on that subject than the statements of the plaintiff, or the opinion of the medical witnesses."

The case of the *Atchison, Topeka and Santa Fe R. Co. v. Thul, 29 Kansas, 466; S. C., 44 Amer. Rep., 659,* is also in point. It is there said:

"The tendency of modern adjudications and of modern thought is to open the door as wide as possible to the introduction of all evidence that may throw light upon the particular subject then undergoing investigation. All the obtainable evidence and instruments of evidence, within certain limitations, may be presented to the jury for their inspection and consideration, and all proper modes of investigation or inspection may be resorted to for the purpose of enabling the jury to arrive at just and correct conclusions. Many instruments of evidence, however, can be examined only by the aid of experts, and in such cases the aid of experts is not only allowable, but may be demanded as a matter of right by the party needing such aid.

"It was shown in the present case by the testimony of Dr. Williams that the nature, the extent, and the permanency of the injury to the plaintiff's eyes could not be determined with any reasonable degree of accuracy except by a careful examination, made by some oculist or person who had made diseases and affections of the eyes a special

study; and we would naturally suppose that such would be the case, independently of the testimony of Dr. Williams. Hence it would seem that in a case like the present the evidence of some such expert who had made such an examination would be an almost indispensable necessity; but such evidence in many cases could not be obtained unless the plaintiff were first compelled by an order of the court to submit himself to a personal examination by some such expert."

*Bryant v. Stillwell, 24 Pa. St., 317*, was a suit on a building contract and the defense was that the house had been improperly constructed. Before the trial the plaintiff sent a person to examine the house, so that he might be able to testify how the work was done. The defendant refused to let him go through the house for the purpose. Judge Black, in the course of his opinion, said: To smother evidence is not much better than to fabricate it. * * * It ought to be understood that where one party has the subject matter of the controversy under his exclusive control, it is never safe to refuse the witnesses on the other side an opportunity to examine it, unless he is able to give a very satisfactory reason. Here there was no ground to believe that the witness would misrepresent what he might see. If the defendant had felt such a suspicion, he could have shown the house to as many others as he chose, and overwhelmed the one perjured man by a host of honest ones."

The only case that militates against these views, that we are aware of, is *Lloyd v. H. & St. Joe R. Co., 53 Mo., 509*, where it is said: "The proposal to call in two surgeons and have the plaintiff examined during the progress of the trial, as to the extent of her injuries, is unknown to our practice and to the law. There was abundant evidence on this subject on both sides; any opinion of physicians or

surgeons at that time would have only been cumulative evidence at best, and the court had no power to enforce such an order."

The refusal may have been proper enough in that case, as it appears that expert testimony had already been introduced, which, in the opinion of the court, was sufficient. But upon the question of power, and the means of enforcing obedience to the order, the decision seems not to have been well considered. Courts have very efficient remedies in their hands for the punishment of recusant witnesses or parties to suits.

The rule. The rule to be deduced from these cases is that where the plaintiff in an action for personal injuries alleges that they are of a permanent nature, the defendant is entitled, as a matter of right, to have the opinion of a surgeon upon his condition—an opinion based upon personal examination.

In refusing to order the examination, as it may do when the evidence of experts is already abundant, the circuit court must exercise a sound discretion; and its action is subject to review in case of abuse.

There could not be a more flagrant instance of the evils resulting from such a refusal than the present case affords. The plaintiff was an uneducated man, incapable of estimating the consequences of his injury, except by the pain and inconvenience which it had caused him. He was able to walk five or six miles the day after the injury, and, indeed, then stated that he had not been hurt at all. No physician attended him or testified on the trial. His claim for damages was based principally on alleged internal injuries, which could only have been understood and properly estimated by a physician. The verdict must have been largely founded upon such injuries; for there were no visble wounds which the jury could appreciate. And yet the plaintiff was allowed to testify to great and permanent in-

juries, without the possibility of successful contradiction, the only means of ascertaining the real facts being denied to his adversary.

It was not disputed that the plaintiff leaped from the train while it was in rapid motion. The court referred it to the jury, under appropriate instructions, to say whether he acted voluntarily, or from a fear, generated by the conduct of the conductor, that worse consequence might befall him if he attempted to remain in the car.

For the error aforesaid, the judgment is reversed and cause remanded for another trial.