# Ala. Great Southern R. R. Co. *v.* Hill.

*Action for Damages by Passenger, for Personal Injuries.*

1. *Examination of plaintiff's person by experts, as to internal injuries.* Where the plaintiff, a young unmarried woman, sues to recover damages for personal injuries sustained from the derailment of the car in which she was riding as a passenger on the defendant's railroad,

[Ala. Great Southern R. R. Co. v. Hill.]

and her attending physician has testified, from an examination of her person several times repeated. as to the nature, character, extent, and probable consequences of her internal injuries, but the correctness of his diagnosis is questioned by other physicians. the defendant has a right to insist that she shall submit to a personal examination by one or more other physicians or surgeons, under the direction and control of the court, and the refusal to order such examination is a reversible error, when it appears that her life or health would not be thereby endangered.

2. *Punitive damages; evidence tending to show gross negligence.*—When the plaintiff sues for damages on account of personal injuries received while travelling as a passenger on the defendant's road, the car being thrown from the track by a broken rail, and there is evidence tending to show such a condition of the track at that place, and so long continued, that the defendant's failure to discover and remedy it was gross negligence, the equivalent of recklessness, wantonness, or intentional wrong; a general charge against the right to recover exemplary damages is properly refused.

3. *Declaration of passenger, as to speed of train, not part of res gestæ.* The declaration or remark of a passenger to the conductor, on the train on which plaintiff was travelling, made a few minutes before the accident happened, indicating his opinion that the train was moving very rapidly—as, asking him if the engineer was not "whooping them up pretty fast that morning"—is not admissible as evidence for the plaintiff.

APPEAL from the City Court of Birmingham.

Tried before Hon. H. A. SHARPE.

This action was brought by Miss Nellie C. Hill against the appellant corporation, to recover damages for personal injuries sustained by plaintiff while travelling as a passenger on the defendant's road on the 27th September, 1887; and was commenced on the 7th February, 1888. The cause was tried on issue joined on the plea of not guilty, and resulted in a verdict for plaintiff, for $8,000. There are forty assignments of error, founded on all the rulings of the court adverse to the defendant. The principal question in the case, as here presented, was based on the refusal of the court below to require the plaintiff to submit to an examination of her person by physicians or surgeons, under the direction and control of the court, as stated more particularly in the opinion of this court. H. R. Allen, a witness for plaintiff, who was a passenger on the train at the time of the accident, was asked, whether he "made any remark to the conductor just before the wreck occurred;" and answered: "I think, a few minutes before it happened, I called his attention—simply made a remark—asked him if the engineer was not whooping them up pretty fast that morning, or something to that effect." The defendant objected to this question, and excepted to its allowance. The defendant requested the court to instruct the jury that, "under the evidence in the case, the plaintiff can not recover punitive or exemplary damages, but only such damages

[Ala. Great Southern R. R. Co. v. Hill.]

as will compensate her for the injuries she has sustained."
The court refused this charge, and the defendant excepted.

EDWARD COLSTON, SAMUEL F. RICE, and DENSON & WOOD,
for appellant, submitted a printed argument, in which they
argued all the assignments of error, and cited the following
authorities on the points decided by this court: (1.) The court
should have required the plaintiff to submit to an examination
of her person by experts, under the direction and control of
the court.—*Newell v. Newell*, 9 Paige, 25; *LeBaron v. Le-
Baron*, 35 Vt. 365; *Walsh v. Sayre*, 52 How. Pr. 334; *Shaw
v. Van Rennsalear*, 60 How. Pr. 143; *Schroeder v. Railroad
Co.*, 47 Iowa, 379; *Railroad Co. v. Thul*, 29 Kans. 466;
*Sibley v. Smith*, 46 Ark. 275; *White v. Railway Co.*,
61 Wisc. 536; *Hatfield v. Railroad Co.*, 33 Minn. 130; *Turn-
pike Co. v. Bailey*, 37 Ohio St. 104; *Mulhado v. Railroad
Co.*, 30 N. Y. 370; Thompson on Trials, § 859; *Anon.*, 35 Ala.
226. (2.) The question to Allen was improperly allowed, and
his answer was not competent evidence.—1 Whart. Law of
Evidence, § 267; *Railroad Co. v. Ashcraft*, 48 Ala. 15.
(3.) The evidence showed no ground for the recovery of ex-
emplary damages, and the court should have so instructed the
jury.—119 Penn. St. 44; 34 Penn. St. 48; 104 Penn. St. 306;
19 Ohio St. 157; 21 How. U. S. 214; 91 U. S. 489; *Wilkinson
v. Searcy*, 76 Ala. 176; *Railroad Co. v. Huffman*, 76 Ala. 492;
*Railroad Co. v. Arnold*, 84 Ala. 159.

TALIAFERRO & SMITHSON, *contra.*—(1.) In cases like this, the
defendant can not insist, as matter of right, that the plaintiff
shall submit to an examination of her person by physicians,
who may be strangers, or even personally obnoxious to her,
as a condition precedent to the assertion of her legal rights.
Divorce cases, involving the question of physical incompe-
tency, are governed by a different principle; and there are
other exceptional cases to be found, which were decided each
on its particular facts. Some of these cases hold it to be
matter of discretion with the primary court, and not subject
to review; while others regard it as a matter of qualified dis-
cretion, the abuse of which will be reviewed by an appellant
tribunal. The appellee denies the right of the court to require
her to submit to an examination so revolting to the instincts
of a virtuous woman, and insists that, if it be matter of dis-
cretion with the court, the demand was properly refused in
this case. Her own physician had testified to his examination
of her person, several times repeated; had stated the facts,
and his own conclusions as to the permanent character of her

injuries; and while other physicians doubted or denied the correctness of his conclusions, it was for the jury to decide whom they would believe. The abstract right of physical examination is denied in *Page v. Page*, 51 Mich. 88; 17 Neb. 211; 16 Neb. 578; 64 Texas, 464; *Robbins v. Railroad Co.*, 29 Hun, 154; *Newman v. Railroad Co.*, 50 N. Y. 412; *Parker v. Enslow*, 102 Ill. 272; *Lloyd v. Railroad Co.*, 53 Mo. 509. That it is matter of discretion with the trial court, is held in *Owens v. Railroad Co.*, 95 Mo. 169; *Sidehum v. Railroad Co.*, 93 Mo. 400; *White v. Railroad Co.*, 61 Mich. 536; 47 Iowa, 375; 37 Ohio St. 104; 29 Kans. 466. (2.) There was evidence tending to establish gross negligence on the part of the defendant, which was the proximate cause of the injuries received.—*Railroad Co. v. Ashcraft*, 48 Ala. 15; *Railroad Co. v. McLendon*, 63 Ala. 275. (3.) The testimony of Allen was admissible.—85 Ala. 357; 83 Ala. 287; 72 Ala. 182.

McCLELLAN, J.—This is an action for personal injuries alleged to have been sustained by the plaintiff, in consequence of defendant's negligence, whereby a car, on which plaintiff was being carried as a passenger, was derailed and overturned. The injuries chiefly complained of, and relied on for the recovery which was sought and had in the court below, are alleged to be internal and permanent in their nature, and very grievous, painful and dangerous. Neither the fact of their infliction, nor their extent, character, or probable consequences, were determinable, except by expert examination of the plaintiff's person in a manner most objectionable to a young woman of delicacy and refinement, as she is shown to be. Such examination had been several times made by her attending physician, who stood ready to testify, and did testify in her behalf, as to the results of his investigation. Prior to the trial, on the day the trial was entered upon, and again pending the trial, after the plaintiff and her physician, and other physicians, had testified, the defendant moved the court for an order requiring plaintiff to submit to an examination by a reputable and disinterested physician, or physicians, to be appointed by and to conduct the investigation under the direction and control of the court, at the cost of the defendant. When this motion was last made, plaintiff's attending physician, Dr. Drennen, had testified fully as to her injuries, and Doctors Chew, Wyman and Whelan, who heard his testimony, had been examined in respect to the injuries described by him, and had, to a greater or less extent, drawn his diagnosis in question. In support of the motion, the affidavits of three

reputable and experienced physicians were put in evidence, to
the effect that the proposed examination would not be painful,
or at all hazardous; that the injuries described in the complaint
—which were the same deposed to by Dr. Drennen—were not
of a character to produce such nervousness as would render
the examination dangerous to the life or health of the plaintiff,
and that if she was able to attend the trial of her case—which
she did—the plaintiff could without risk sustain the ordeal of
the proposed investigation.    On the other hand, two affidavits
were offered against the motion.    One by Drennen, that the
plaintiff was a delicate and refined female, about nineteen
years old, of nervous temperament, and had been rendered
exceedingly nervous—even hysterical—by the shock of the
accident and the consequent ills which had since afflicted her;
and that the proposed examination would involve danger to
her health, though it appears from this affidavit that he
himself had made "several thorough surgical examinations of
the plaintiff," of the kind proposed, without any ill results
therefrom.    The other opposing affidavit was by one of
plaintiff's counsel.    He deposes to her age, delicacy of feel-
ing, nervous temperament, low state of health, &c.; to the
high standing of Drennen as a physician and surgeon, and to
the facts that Drennen had made the physical examinations
proposed by the motion, and would testify in regard thereto
on the trial.    On this state of facts, the court severally and
successively overruled the motion each time it was pre-
sented, and refused to require the plaintiff to submit to a
physical examination.    The propriety of this action of the
court is one of the leading questions presented by this.
appeal.

The authorities are somewhat conflicting on the point thus
presented.    A pioneer case, declaratory of the power of courts
to require the plaintiffs, in actions of this character, to submit
themselves to physical examination by experts, a case, too,
which is put forward by the appellant as a leading one in sup-
port of the right which the lower court denied it, is that of
*Walsh v. Sayre*, 52 How. Pr. 334, decided by the Special Term
of the Superior Court of New York.    This case was approved
by the Special Term of Common Pleas of New York, in *Shaw
v. Van Rensselaer*, 60 How. Pr. 143, in an *obiter dictum*, though
an application for an inspection of the person was denied on the
facts there presented.    Subsequently, the question came under
review in the Supreme Court of that State, and *Sayre's Case*
was in effect overruled, and the power of the courts to order
an inspection of a plaintiff's person was repudiated and de-
nied.—*Roberts v. O. & L. C. R. R. Co.*, 29 Hun, 154.    So.

that the law may be considered settled in the State of New York, against the exercise of this power by the courts.

In Missouri, the course and history of judicial opinion on the subject has been precisely the reverse of that exhibited in New York. The Supreme Court of Missouri first held, that "the proposal to the court to call in two surgeons, and have the plaintiff examined during the progress of the trial as to the extent of her injuries, is unknown to our practice and to the law, . . . . and the court had no power to enforce such an order."—*Loyd v. H. & St. J. R. R. Co.*, 53 Mo. 509. Afterwards, this decision was seceded from, and the doctrine thoroughly established in that State, that the trial court has the power to require the plaintiff to submit to surgical examination as to the character of the injuries complained of; but that defendant has no absolute right to demand an order for such investigation, and such examination is a matter of discretion with the court, the exercise of which will not be interfered with unless manifestly abused.—*Shepard v. Mo. Pac. Railway Co.*, 85 Mo., 629; *Sidekum v. W., St. L. & P. Railway Co.*, 93 Mo. 400; *Owens v. K. C., St. J. & C. B. R. R. Co.*, 95 Mo. 165. The power of courts to this end is denied by courts in Illinois, in a very meagre, unreasoned, and unsupported opinion of the Supreme Court, in which the subject is dismissed with the assertion that "the court had no power to make or enforce such an order."—*Parker v. Enslow,* 102 Ill. 272.

It is believed that no other than the cases referred to can be found, which deny the *power* of trial courts to require plaintiffs, in actions for personal injuries, to submit themselves to surgical examinations in respect thereto. Of these, one has been expressly and repeatedly overruled; another appears to have been decided without due consideration of the question, and investigation of the adjudications upon it; and the third and only other alone remains as an authority for the non-existence of the power. On the other hand, the Missouri cases *supra,* and many others, concur in the establishment of the following propositions : (1.) That trial courts have the power to order the surgical examination by experts, of the person of a plaintiff who is seeking a recovery for physical injuries. (2.) That the defendant has no absolute right to have an order made to that end and executed, but that the motion therefor is addressed to the sound discretion of the court. (3.) That the exercise of that discretion will be reviewed on appeal, and corrected in case of abuse. (4.) That the examination should be ordered, and had under the direction and control of the court, whenever it fairly appears that the ends of justice re-

quire the disclosure, or more certain ascertainment, of facts. which can only be brought to light or fully elucidated by such an examination, and that the examination may be made without danger to plaintiff's life or health, and without the infliction of serious pain. (5.) That the refusal of the motion, where the circumstances present a reasonably clear case for the examination under the rule last stated. is such an abuse of the discretion lodged in the trial court as will operate a reversal of the judgment in plaintiff's favor.—Thompson on Trials, § 859; *Schroeder v. C., R. I. & P. R. R. Co.*, 47 Iowa, 545; *S. C. & P. R. R. Co. v. Finlayson*, 16 Neb. 578; *Stuart v. Havens*, 17 Neb. 211; *A., T. & S. F. R. R. Co. v. Thul*, 29 Kan. 466; *M. & M. T. Co. v. Bailey*, 37 Ohio St. 104; *I. & G. N. Railway Co. v. Underwood*, 64 Tex. 463; *Hatfield v. St. Paul & Duluth R. R. Co.*, 33 Minn. 130; *R. & D. R. R. Co. v. Childress*, 82 Ga. 719; *Sibley v. Smith*, 46 Ark. 275; *White v. M. C. Railway Co.*, 61 Wis. 536.

The doctrine of these authorities has been fully recognized in Alabama, in a case decided at the present term (*McGuff v. State*, 88 Ala. 147); and has quite recently been acted upon by this court in a proceeding for divorce, even to the extent of requiring both the complainant and the respondent to submit their persons to expert physical examination.—*Anonymous*, 7 So. R. 100; 89 Ala. 291. See, also, *Anonymous*, 35 Ala. 226. Indeed, the propriety of a resort to this practice in divorce cases, even with respect to the defendant, has been long established.—*Devanbagh v. Devanbagh*, 6 Paige's Ch. 554; *LeBaron v. LeBaron*, 35 Vt. 365; *Newell v. Newell*, 9 Paige's Ch. 25.

It is apparent from the adjudged cases, that the statement of the rule as to the revision of the trial court's action on a motion of this sort, to the effect that such action will not be interfered with unless it involves a manifest abuse of discretion, is inapt and misleading. What is really meant—the rule fairly deducible from the opinions—is, that if a proper case for granting the motion is clearly made, and is refused, the appellate court, having before it all the facts involved in the determination of the matter in the lower court, will reverse the judgment thus infected with error. An examination of those cases which are most emphatic in holding this matter to be in the trial court's discretion, free from appellate interference except in the contingency of manifest abuse, demonstrates the soundness of the construction we have placed on them. The Missouri cases, for example, while affirming the broad doctrine of non-interference, except where discretion has been manifestly abused, in each instance, give reasons for

not reversing *nisi prius* action, which show that that action, upon the strictest rules of appellate inquiry, was free from error. Thus, the reasons given in *Shepard's Case* was, that "the order asked by the defendant was unreasonable, in that it asked that this lady should submit to personal examination, not by one skilled surgeon, but by at least three; . . . . and this, when she had once submitted to such an examination by Dr. Jackson, and again offered to submit to an examination by an eminent and reputable surgeon and physician of the city of St. Louis, where the cause was pending; but this did not satisfy the defendant, who proposed to summon a number of physicians and surgeons to participate in the examination." *Shepard v. Mo. Pac. Railway Co.*, 85 Mo. 634. The refusal of the motion in the case of *Owens v. K. C., St. J. & C. B. Railway Co.*, 95 Mo. 169, was based on the ground, that without such examination there was abundant evidence as to the nature, cause, and extent of the injuries complained of; in other words, the appellate court could see that a proper case had not been made for the examination, in that no necessity for it was shown, and the ends of justice could be met without it. The facts in *Sidekum v. St. L. & P. Railway Co.*, 93 Mo. 400, were strikingly like those arising on the motion in the present case, so far as testimony adduced by plaintiff is concerned. The application was made before the trial was entered upon, and refused "for the time being." The Supreme Court say: "The action of the trial court upon said motion, as we have seen, was merely a refusal to grant the same for the time being; and as the defendant did not renew its application for such order, at any stage of the proceeding, the court may have well concluded, that after hearing the said evidence in the cause introduced by plaintiff, including that of Dr. Bone, which we have given in substance [and which was of much the same character as that given by Dr. Drennen in the case at bar], defendant did not deem it necessary to renew his motion, or to insist thereon, but had abandoned the same." The clear and necessary implication is, that had the motion been renewed on a state of facts precisely those involved here, omitting the affidavits and evidence of the physicians called by the defendant, its refusal would have been an error requiring the reversal of the judgment.

What we have said applies also to the other cases cited, except that of *Sibley v. Smith*, 46 Ark. 275, which states the rule as deduced from the adjuged cases to be, "that where the plaintiff in an action for personal injuries alleges that they are of a permanent nature, the defendant is entitled, as a matter of right, to have the opinion of the surgeon upon his condition

[Ala. Great Southern R. R. Co. v. Hill.]

—an opinion based upon personal examination. In refusing to order the examination, as it may do when the evidence of experts is already abundant, the Circuit Court must exercise a sound discretion; and its action is subject to review in case of abuse." And the judgment below was reversed, and the cause remanded, really on the ground that a proper case had been made for the exercise of the court's discretion favorably to the application for an examination, and its refusal to so order was, therefore, a reversible error.

Guided by the rule deducible from these authorities, rather than by the expressions used when they attempt a formulation of it, we shall consider whether the defendant clearly presented a case upon which the lower court should have ordered the examination moved for. We are satisfied from the evidence which was before the court when the last application was made, that such an examination would not have involved any ill consequences to the plaintiff. She had submitted to be so examined several times by Dr. Drennen, safely, and even without pain. The fact that she was of a nervous temperament, or in a nervous condition, involved no tenable objection, especially in view of the opium habit which she had contracted, and which could, without hurt to her, have been utilized to allay nervousness. Her delicacy and refinement of feeling, though, of course, entitling her to the most considerate and tender treatment consistent with the rights of others, can not be permitted to stand between the defendant and a legitimate defense against her claim of a large sum of money. When it becomes a question of possible violence to the refined and delicate feelings of the plaintiff on the one hand, and possible injustice to the defendant, on the other, the law can not hesitate; justice must be done. Was it essential to the ends of justice that plaintiff should submit to this examination? We think it was. It is true, that Dr. Drennen had made the examination, and had fully deposed to the injuries complained of. But he was the plaintiff's physician, and her witness. His sympathies were naturally with her, operating a bias in her favor, even without consciousness of it on his part. Moreover, as we have said, his conclusions and opinions from the premises he testified to, did not meet the approval or concurrence of the several other reputable surgeons and physicians who were examined as to their conclusions from the facts stated by him. A serious doubt was thus raised as to what were the real facts in respect to the injuries. To a satisfactory solution of that doubt the examination moved for was essential. The result of such examination by skilled and disinterested surgeons, under the directions of the court, would necessarily have been, either to put the plain-

tiff's claim in this regard on impregnable ground, or to have destroyed it altogether; and in either case, there would have been an unquestioned assurance that justice had been done, an assurance which finds no secure anchorage in the present record. Our opinion is, that the court erred in overruling defendant's motion for the examination.

We shall notice briefly only such other assignments of error as are insisted on in argument,

We discover no error in the rulings of the trial court on the question of punitive damages. There was evidence in the case tending to show that the cross-ties, or a considerable portion of them, under the track at the point of the derailment of the car in which plaintiff was riding, the wreck being the result of a broken rail, were "unsound," "decayed," "rotten;" that the rail which broke was an "old rail," as were others along there, and that the defendant company was "constantly repairing that old track with old rails." With the weight or sufficiency of this evidence we have nothing to do. Whether or not its tendencies were entirely rebutted by other testimony, is also beyond our inquiry. Those were questions for the jury. We are satisfied that it tended to show a condition of the track, not to know and remedy which was such gross negligence on the part of the company as implied recklessness and wantonness—such indifference to the probable consequences of its continued use—such disregard of the safety of passengers being transported over it—as is the equivalent of intentional wrong, or a willingness to inflict the injuries complained of. And if the jury found the facts to be in accordance with this tendency of the testimony, they were authorized to return a verdict for exemplary damages.

It has been many times ruled by this court, that the refusal of the lower court to grant a new trial is not revisable.

The declaration of Allen to the conductor, made before the accident, indicating Allen's opinion that the "engineer was whooping them up pretty fast that morning," was, in our opinion, inadmissible.—*L. E. & W. Railway Co. v. Loffinger*, 15 Amer. & Eng. R. R. Cases, 371; *M. & M. R. R. Co. v. Ashcraft*, 48 Ala. 15. Facts may possibly be adduced on another trial which will legalize this evidence, but they do not exist in this record.

We discover no error in the other matters urged in argument.

Reversed and remanded.