(94 N. W. Rep. 901.)

---

MARGARET ANN BROWN *v.* THE CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.

Opinion filed May 16, 1903.

**Foreign Corporation—Service of Process.**

1.  The service of summons within the state upon a managing agent
of a foreign corporation is sufficient service upon the corporation.

**Carriers—Managing Agent.**

2.  A station agent for a railroad company, authorized to sell and'
collect for passenger tickets, and to receive and deliver freight and to
collect for freight shipments, is sufficient of a managing agent, within·
the meaning of section 5252, Rev. Codes 1899, to make service of sum-
mons upon him, in a civil action against the railroad company, service·
upon such corporation.

**Physical Examination—Power of Trial Court.**

3.  In an action to recover· damages for personal injuries alleged to·
be permanent, the trial court has power to require the injured party to·
submit her person to an examination of physicians or surgeons desig-
nated by the defendant, when, in the exercise of a sound judgment, it
appears to the court that the necessities of the case require such an·
examination.

**Refusal, an Abuse of Discretion—Reversible Error.**

4.  To permit plaintiff and a physician of her selection, after examin--
ation of her person, to testify that her injury was permanent, and to deny·
the defendant the privilege of having the alleged injuries examined by
competent surgeons to enable them to see from what, if any, injuries she
suffered, their nature, extent, and probable duration, was an abuse of·
discretion, and reversible error.

**Commencement of Action Implies Consent to Produce Best Evidence.**

> 5. The plaintiff in a personal injury case, by the commencement of her action, impliedly consents to the doing of that measure of justice which she exacts. She cannot claim damages for injuries which she conceals from the reasonable inspection of witnesses when such inspection is necessary to equip them to testify on the trial concerning such injuries. She must, so far as in her power, enable the court, jury, and the adverse party to have the best evidence which can be produced in the case.

Appeal from District Court, Stutsman County; *Glaspell, J.*

Action by Margaret Ann Brown against the Chicago, Milwaukee & St. Paul Railway Company to recover for personal injuries. Verdict and judgment for plaintiff, and defendant appeals.

Reversed.

*H. H. Field* and *Ball, Watson & Maclay,* for appellant.

Section 3263, and subdivisions 5 and 6, of section 5252, afford methods of serving process on a foreign corporation. If a foreign corporation has empowered the secretary of state to receive service, then process, if not served upon him, must be served on a managing agent. But the rule is relaxed as to corporations which have not complied with section 3263. If the cause of action arose in this state, service may be made on any person transacting the principal's business here. By the weight of authority in states, where service must be made upon the managing agent, service upon a station agent is not sufficient. *Doty* v. *Railroad,* 8 Abb. N. Y. 427; *Brewster* v. *Railroad,* 5 How. Pr. 183, 19 Enc. Pl. & Pr. 680, et seq; *Foster* v. *Charles Betcher Lumber Co.,* 58 N. W. Rep. 9; 6 R. & M. Ry. Digest, 1093, et seq; *Vitola* v. *Publishing Co.,* 73 N. Y. 273.

The right of one party to an action to compel another to submit to a physical examination presents a new question in this jurisdiction. The Federal Supreme Court, Justices Brewer and Brown dissenting, now stand alone in denial of the power. (*Union Pacific Ry. Co.* v. *Botsford,* 141 U. S. 258, 11 Cup. Ct. Rep. 1003, 35 L. Ed. 740). *City of South Bend* v. *Turner,* 60 N. E. Rep. 271. As pointed out in *City of South Bend* v. *Turner, supra,* the power to order an examination has been upheld in Alabama, Arkansas, Georgia, Kansas, Kentucky, Michigan, Missouri, Minnesota, Nebraska, Pennsylvania, Ohio, Texas, Wisconsin, Illinois and Washington. The following cases also support the rule: *Railroad* v. *Simpson,* 64 S. W. Rep. 733; *Lane* v. *Spokane Falls & N. Ry. Co.,* 57 Pac. Rep. 367; *Wanek* v.

*Winona,* 80 N. W. Rep. 851; *Contra. McGuigan* v. *Delaware L. & W. R. Co.,* 29 N. E. Rep. 235; *Galveston* v. *Railroad,* 67 S. W. Rep. 776; *Stack* v. *New York, N. H. & H. R. Co.,* 58 N. E. Rep. 686; *Mills* v. *Railroad,* 40 Atl. Rep. 1114.

*Lee Combs,* for respondent.

The provisions of the statute permitting service of process on the secretary of state, is not exclusive. Subdivision 5 of section 5252, declares that service may be made on the secretary of state, "or upon the managing agent," of the corporation. This settles the controversy that, notwithstanding the appointment of the secretary of state service could be lawfully made upon such managing agent within the state. The defendant's ticket agent at Fargo, N. D. was a "managing agent." Cases cited by appellant in support of the claim, that a station agent is not a "managing agent" have been overruled by later and better considered cases in the same court. *Tuchband* v. *Chicago & Alton R. Co.,* 115 N. Y. 438, 22 N. E. 360. That the station agent of a railroad company is a "managing agent," is held in *Foster* v. *Charles Betcher Lumber Co.,* 58 N. W. Rep. (S. D.) 9; *Express Co.* v. *Johnson,* 17 Ohio St. 641; *McAllister* v. *Ins. Co.,* 28 Mo. 214; *White Lake Lbr. Co.* v. *Stone,* 27 N. W. Rep. 395. Sufficiency of service of process on defendant is set at rest by subsequent general appearance of the defendant; and his special, was subsequently converted into a general appearance, by his seeking affirmative relief. *Belknap* v. *Charlton et al.,* 25 Or. 41, 34 Pac. 758; *Coad* v. *Coad,* 41 Wis. 26; *Blackburn* v. *Sweet,* 38 Wis. 578; *Pry* v. *Hannibal, etc., R. Co.,* 35 W. Va. 438; *Handy* v. *Ins. Co.* 37 Ohio St. 366; *Bucklin et al.* v. *Strickler,* 32 Neb. 602, 49 N. W. Rep. 371; *Aultman* v. *Steinan,* 8 Neb. 109; *Burdette* v. *Corgan,* 26 Kan. 102; *Lowe* v. *Stringham,* 14 Wis. 241; see also *Lyon* v. *Miller,* 2 N. D. 1, 48 N. W. 314. The latter case is distinguishable from *Miner* v. *Francis,* 3 N. D. 549, 58 N. W. Rep. 343. If the court is asked to determine questions touching the merits, a special appearance will operate as a general appearance. *Gans* v. *Beasley et al.,* 4 N. D. 140, 59 N. W. Rep. 714; *Benoit* v. *Revoir,* 8 N. D. 226, 77 N. W. Rep. 605; *Yorke* v. *Yorke,* 3 N. D. 343, 55 N. W. Rep. 1095.

The court below did not err in denying appellant's motion to compel respondent to submit her person to a physical examination by defendant's physician, because it had no power to make such order. If it had such power it was a discretionary one, and there was no

abuse of discretion in denying the motion. *Parker* v. *Enslow,* 102 Ill. 272; *Pensylvania Co.* v. *Newmeyer,* 28 N. E. Rep. 860; *Philadelphia Ry.* v. *State,* 58 Md. 372; *Lloyd* v. *Hannibal, etc., R. Co.,* 53 Mo. 509; *McQuigan* v. *Delaware, etc., R. Co.,* 129 N. Y. 50; *Union Pac. R. Co.* v. *Botsford,* 141 U. S. 258, 11 Sup. Ct. Rep. 1003, 35 L. Ed. 740. Where the right exists, the application is addressed to the sound discretion of the court, and the exercise of such discretion will not be interfered with except in case of manifest abuse. *Gulf, etc., R. Co.* v. *Norfleet,* 78 Tex. 321; *O'Brien* v. *City of LaCrosse,* 75 N. W. Rep. 81; *St. Louis Bridge Co.* v. *Miller,* 28 N. E. Rep. 1091; *Richmond, etc.,* v. *Childress,* 82 Ga. 719; *Belt Electric Line Co.* v. *Allen* (Ky) 44 S. W. Rep. 89; *Strudgeon* v. *Village of Sand Beach,* 65 N. W. Rep. (Mich.) 616; *Hatfield* v. *St. P. & D. R. Co.,* 22 N. W. Rep. (Minn.) 176. Where the power exists, the application must be made with diligence, and when made upon trial, should be refused. *Atchinson, etc., R.* v. *Thul,* 29 Kas. 466; *Kinney* v. *Springfield,* 35 Mo. App. 97; *So. Kan. R. Co.* v. *Michaels,* 46 Pac. (Kas.) 938; *Terre Haute, etc., R. Co.* v. *Brunker,* 26 N. E. Rep. (Ind.) 178; *Bagley* v. *Mason,* 69 Vt. 175. Where the power exists it is one to be exercised in view of the peculiar features of each case. If the sense of delicacy of the party to be examined, may be offended, or where the testimony may be only cumulative, or where the necessities of the case do not require it, or where the health of the person examined may be endangered, it is no error for the court to deny the application, and the appellate court will not reverse its action. *Graves* v. *City of Battle Creek,* 54 N. W. Rep. 757; *Smith* v. *City of Spokane,* 47 Pac. 888; *Owens* v. *Kansas City R. R. Co.,* 33 Am. & Eng. R. R. Cases, 524, S. C. 6 Am. St. Rep. 39; Thompson on Trials, section 859.

COCHRANE, J. The defendant, a foreign corporation, appeared specially in this case, and moved to set aside the service of the summons and complaint because W. H. Gross, the person on whom the service was made, was not a managing agent within the meaning of the statute, and consequently, that service upon said Gross was not service upon the defendant corporation. In support of its motion, defendant presented the affidavit of one of its attorneys, setting forth that the only service of summons and complaint in this action was that made upon W. H. Gross, who, at the date of such service, was local station agent for defendant at the city of Fargo, in Cass county, N. D. That the defendant in January, 1896, pursuant to the require-

ments of section 3263, Rev. Codes, 1899, filed its irrevocable certificate in the office of the secretary of state appointing such secretary of state and his successors its true and lawful attorneys upon whom all process in any action or proceeding against it might be served, and stipulating therein that service of process upon its said attorney should be of the same force and validity as if served upon it person· ally in this state. That the defendant did not own any property or have any office in the county of Stutsman. That W. H. Gross, its station agent at Fargo, on whom service was made, had authority to act for it in the sale of passenger tickets for the carriage of passen· gers, and to collect pay for tickets so sold, to receive and deliver freight, and to collect unpaid charges for freight carried on said rail· way, with necessary incidental authority for the execution of the above powers, but with no other or further authority to represent it as agent.

This motion presents the question whether the station agent of a foreign railway corporation doing business within this state is a managing agent within the meaning of subdivision 5, section 5252, Rev. Codes 1899, which provides that the summons in a civil action may be served upon a foreign corporation by delivering a copy thereof to the secretary of state, or to the president, secretary, cashier, treasurer, a director, or managing agent thereof, if within the state, doing business for the defendant. We agree with the trial court that Mr. Gross was enough of a managing agent for defendant to sustain this service. He transacted freight and passenger business for it at its Fargo station or office. "The person who, as its agent, does that business, should be considered its managing agent; and more especially should that be so where the foreign corporation has an office or place of business in the state; and when that office is in charge of that person, and he there acts for the corporation, he is there doing business for it, and so manages its business." *Tuchband* v. *Ry. Co.,* 115 N. Y. 440, 22 N. E. 360. "An agent who is invested with the general conduct and control, at a particular place, of the business of a corporation, is a managing agent within the meaning of the Code, which authorizes service of summons on a managing agent of a foreign corporation." *Porter* v. *Ry. Co.,* 1 Neb. 14; *American Ex. Co.* v. *Johnson,* 17 Ohio St. 641; *Foster* v. *Lumber Co.,* 5 S. D. 57, 58 N. W. 9, 23 L. R. A. 490, 49 Am. St. Rep. 859. Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made. The statute is satisfied if he be

a managing agent to any extent. *Palmer* v. *Pennsylvania Co.*, 35 Hun. 369.

Plaintiff alleged, in her complaint, permanent injury to her uterus and bladder, also the fracture of the hip bone, through the negligence of defendant's servants in bumping cars together, in one of which she was a passenger.

Defendant, after service of the complaint upon it, demanded of plaintiff's counsel the privilege of having plaintiff's person examined by medical experts, with a view to qualifying them to testify upon the trial as to the nature and effect of her injuries. This request was refused; whereupon one of defendant's counsel made affidavit that defendant was without knowledge as to the nature or extent of plaintiff's injuries, if any, and was without means of obtaining knowledge as to plaintiff's condition; that an examination of plaintiff's person was necessary to a correct diagnosis of her case, without which examination defendant would be without witness as to her condition. To the end that justice should be done, defendant set out that an examination of her person by medical experts should be required and had, and moved the court, upon this showing, that plaintiff be required, before trial, to submit to an examination of medical experts as to the nature and effect of her injuries. This motion was denied.

Upon the cross examination of plaintiff she was asked to submit her person to an examination by a physician for the purpose of enabling him to testify touching her physical condition. The question was objected to by her counsel. He stated that she was unwilling to submit to such an examination. The objection was sustained. The trial court placed his ruling upon ground thus tersely stated in his charge to the jury, and to which instruction an exception was also reserved: "The court is of the opinion that it is without power to make or enforce such order; and if the court is in error on that point, and has such power in a proper case, yet in this case, in view of the plaintiff being a woman, and in view of the examination necessary under all the circumstances, still would the court decline to make the order, for the reason that it would in this case be an ordeal to which she ought not to be subjected." This instruction and the several rulings hereinbefore set out are assigned for error, and present, for the first time in this jurisdiction, the question as to the court's power to require the plaintiff in a proper case to submit her person to a physical examination. We are of opinion that the court

possessed the power in this case, and that it was an abuse of discretion to refuse to require plaintiff to submit herself to the examination of physicains under such reasonable restrictions as the court should prescribe.

Plaintiff asserts that her injuries are permanent, but to organs of the body which, whether sound or unsound, diseased or well, temporarily or permanently impaired in the performance of their functions, cannot be made to appear to the court but through her *ipse dixit,* or the opinion of experts, founded upon a personal examination of the parts. Where a plaintiff claims damages from another because, from its negligence, some bodily injury has been inflicted, or the functions of any organ of the body impaired, the fact of the injury or impairment of the function, its nature, extent and probable duration must be established by competent, and that the best, evidence of which the case is susceptible. The very nature of the injuries here complained of is such as to render it highly improbable that the plaintiff could testify as to their development, whether permanent or susceptible of immediate cure. The best evidence is that of medical experts, who, from experience and training, can testify as to the conditions, wherein abnormal, and the probable duration and effect of the injury. To enable them to so testify, a personal examination was necessary. Plaintiff should not claim damages for an injury of which she was unwilling to furnish the best evidence.

Plaintiff was injured on the 26th of March, 1902; was examined by a physician in St. Paul, who gave her a bottle of medicine. She, on the same day, took the train for Dazey, N. D. She stayed with her son-in-law from March 27th until May 9th. No physician saw her or made an examination of her during this time. On the 9th day of May, Dr. Lang, at the request of her counsel in this case, made an examination for the purpose of qualifying him to testify upon the trial. She did not ask him to prescribe for her, and he did not prescribe for her; and she did not take any medicine or remedies of any kind for the ailments of which she complained, save the bottle of medicine before mentioned. Dr. Lang testified that he made a physical examination of her internally and externally; that he took off her clothes, and spent an hour and a half in the examination; that he did not find any fracture. He describes conditions of soreness and a retroversion of the uterus, which might have resulted from the accident complained of. The weight to be given the testimony of Dr. Lang as to what he found on this examination depends largely upon

the value of plaintiff's unsworn statements to him, thus: He found tenderness near the great trochanter. She complained of great pain on the inner side. Found a tender point about one inch descending of the ramus and ischial tuberosities. This injury was very painful; it caused pain at every step, and painful abduction of the limb. The mouth of the womb was pressing against the bladder, which caused pain at micturition. She complained of pain in passing water, and difficulty in starting to pass water. It further appeared that Dr. Patton made a personal examination of plaintiff a few days before the trial, with a view to testifying in her behalf. That he was in Jamestown on the day of the trial and was not called as a witness. Dr. Lang's examination, on which he discovered no fracture, antedated the complaint in which a fractured hip is alleged as one result of the accident. If plaintiff suffered the pains testified to by her, the fact that no physician was consulted for nearly two months, and then only to secure his testimony in her contemplated suit; that a physician of her own employment, who had examined her to qualify him as her witness, was present in town at the time of the trial, and was not called as a witness; in connection with her constant refusals to submit to an examination by physicians not in her employ—subjects her to criticism of not having produced the best evidence of which the case was susceptible, but rather with the suspicion of having suppressed or held back something. If a court is powerless, in a case like this, to require a plaintiff to submit her injuries to the inspection of physicians, to the end that the exact truth as to their nature, effect, and possible duration may be ascertained, when she, by her suit, has made them the subject of judicial investigation, then the law would permit her to put forward just so much and such parts of the facts, as, in her judgment, would benefit her case, at the expense of her adversary, and to invoke the court's aid to compensate her for an injury, through a partial and one-sided investigation. The court, under such circumstances, would become a means of accomplishing the grossest injustice.

We subscribe to the rule, declared by the supreme court of Georgia and followed in many other states, that when a person appeals to the sovereign for justice he impliedly consents to the doing of justice to the other party, and impliedly agrees in advance to make any disclosure which is necessary to be made in order that justice may be done. *Richmond, etc., Ry. Co.* v. *Childress,* 82 Ga. 719, 9 S. E. 602, 14 Am. St. Rep. 189, 3 L. R. A. 808; *Graves* v. *City,* 95 Mich.

266, 19 L. R. A. 641, 54 N. W. 757, 35 Am. St. Rep. 561; *Lane* v. *Ry. Co.* (Wash.), 57 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821. Plaintiff, under this rule, could not insist upon her case going on, when she obstructed the investigation by her adversary which was necessary to a full consideration and correct determination of the controversy. She could not, over the objection of her adversary, withhold the best obtainable evidence as to the nature and permanency of her alleged injuries, and insist upon a verdict in her favor upon evidence of less weight. *Graves* v. *City*, 95 Mich. 266, 54 N. W. 757, 19 L. R. A. 641, 35 Am. St. Rep. 561. If impartial justice is to be administered, we see no way of its attainment in all cases, if an important source of evidence is open to one, and closed to the other party. *City* v. *Turner* (Ind. Sup.) 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200.

The court had power to require her to submit to an examination, and it was an abuse of discretion in this case to refuse to exercise its power and require plaintiff to submit to such examination, or to submit to a dismissal of her case if she refused, because defendant was without evidence as to her condition, and without means of procuring it, excepting in so far as the plaintiff made disclosure. The great weight of modern authority is to this extent. The cases vindicating this position are fully cited in the following opinions: *City* v. *Turner* (Ind. Sup.) 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200; *Lane* v. *Ry. Co.* (Wash.) 57 Pac. 367, 46 L. R. A. 153, and note; *City* v. *Gilliland* (Kan.) 65 Pac. 252, 88 Am. St. Rep. 232; note to *Cleveland, etc., Railway Company* v. *Huddleston,* 68 Am. St. Rep. 238, (s. c., 36, L. R. A. 681, 151 Ind. 540); *Wanek* v. *Winona,* 80 N. W. 851, 46 L. R. A. 448, 79 Am. St. Rep. 354; *Louisville, etc., Ry. Co.* v. *Simpson* (Ky.) 64 S. W. 733; *Belt Line Co.* v. *Allen* (Ky.) 44 S. W. 89, 80 Am. St. Rep. 374; 16 Enc. Pl. & Pr. 483; 16 Enc. L. 810. The Supreme Courts of the United States, Massachusetts, Texas, and Delaware deny the power. *Union Pacific Ry. Co.* v. *Botsford,* 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734; *Stack* v. *Ry. Co.,* 177 Mass. 155, 58 N. E. 686, 52 L. R. A. 328, 83 Am. St. Rep. 269; *Mills* v. *Ry. Co.* (Del. Super.) 40 Atl. 1114; *Galveston* v. *Ry. Co.* (Tex. Civ. App.) 67 S. W. 776.

In so far as the majority opinion of the Supreme Court of the United States was influenced by the federal statute quoted in its opinion, the Botsford case cannot be considered an authority here. When

it is remembered that courts of the United States other than the
Supreme Court possess no jurisdiction but what is given them by
the congress which created them, and that no statute gives to these
courts power to order a discovery, the argument of the majority of
that court that the statute of the United States prescribes the mode
of proof in the trial of actions at common law, and that it shall be by
oral testimony and examination of witnesses in open court, except
as in the statute provided, and that the only exception provided for
is the one for taking depositions, and for compulsory production
of books or writings in the possession of a party which contain evi-
dence pertinent to the issue, and therefore that the statute inhibits
any other form of examination or discovery, and removes from the
courts the power to require it, we find this court is treating of limita-
tions by statute that have no binding force upon state courts. There
is no limitation, either in the Constitution or statutes of this state
upon the power of the district court to order such a discovery as was
demanded in this case, under the circumstances here set out. The
courts of Massachusetts, Texas, and Delaware, in following the
Supreme Court of the United States, did not notice the influence
which the federal statute had upon the determination of the ques-
tion by that court.

It was no answer to defendant's request for an examination that
it would offend the modest and womanly instincts of the plaintiff
to require her to submit to an examination of experts. She told a jury
of twelve men of her pains; how and when they affected her. She
submitted to a digital examination of her injured parts by two phy-
sicians of her own selection. It would have been no greater indig-
nity to be examined by other doctors; but "when it becomes a ques-
tion of possible violence to the refined and delicate feelings of a
plaintiff, on one side, and possible injustice to the defendant on the
other, the law cannot hesitate. It was essential to the ends of justice
that plaintiff should submit to this examination." *Alabama, etc.,
Ry. Co.* v. *Hill,* 90 Ala. 71, 8 South. 90, 9 L. R. A. 442, 24 Am. St.
Rep. 764; *City* v. *Turner* (Ind. Sup.) 60 N. E. 275, 82 Am. St. Rep.
481; *White* v. *Ry.* Co., 61 Wis. 536, 21 N. W. 524, 50 Am. Rep. 154:
note to *Cleveland, etc., Ry. Co.* v. *Huddleston,* 68 Am. St. Rep. 247.
Neither was it an answer that one physician had examined her and
testified to what he found, and was cross-examined by the defendant.
Surgeons of equal learning and honesty may not diagnose an injury
in the same way. They may not be equally strong in perception, or

equally accurate in observation or in measurements, and thus form different judgments of the existing conditions, which, of necessity, must constitute the basis of their scientific opinions. If a defendant must make his defense against the expert opinions of the plaintiff's chosen surgeons, without the opportunity of testing the verity of the basis of such opinions, he may be placed at a disastrous disadvantage, such as the law cannot and does not sanction. *City* v. *Turner* (Ind. Sup.) 60 N. E. 275, 82 Am. St. Rep. 481. Defendant's right was, through an examination, to test the effect and reduce the weight of the evidence introduced by plaintiff. *Haynes* v. *Trenton,* 123 Mo. 326, 27 S. W. 622. The result of the investigation asked for should have put plaintiff's claim on impregnable ground, or have destroyed it altogether. In either case there would have been an assurance that justice had been done; an assurance which finds no secure anchorage in the present record. Alabama, etc., Co. v. *Hill,* 90 Ala. 71, 8 South. 90, 9 L. R. A. 442, 24 Am. St. Rep. 764.

The judgment appealed from is reversed. The district court will enter an order reversing its judgment, and directing such further proceedings as may be lawful in the premises. Appellant will recover costs. All concur.