THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* HUDDLESTON.

[No. 18,056.   Filed April 8, 1897.]

EVIDENCE.— *Examination of Party.— Physical Examination.—Examination of Urine.—Witnesses.*—In an action for damages for personal injuries resulting in the alleged dislocation of one of plaintiff's kidneys, thereby producing the secretion of albumen and sugar in the urine, plaintiff may be required to produce specimens of his urine in court for examination and analysis, accompanied by affidavit that the urine was voided by him.

From the Henry Circuit Court.   *Reversed.*

*Byron K. Elliott* and *William F. Elliott,* for appellant.

*B. F. Marsh, E. S. Jaqua, J. S. Engle, W. G. Parry* and *W. A. Brown,* for appellee.

HOWARD, J.—This was an action for damages brought by appellee against appellant for injuries alleged to have been received by reason of the negligence of appellant in running one of its trains of cars into a train of cars on the Grand Rapids & Indiana Railroad, at the crossing of said roads in the city of Winchester, whereby a telegraph office and building upon appellant's right of way, in which appellee was lawfully engaged at the time, was overturned, and appellee thus injured.

The accident was the same as that described in the case of the *Cleveland, etc., R. W. Co.* v. *Gray,* 148 Ind. 266.   The appellee, Gray, in that case was present with the appellee in this case at the time and place where both are alleged to have been injured, and the questions arising in both cases are to a great extent identical.   The complaint in this case is the same as the first paragraph of the complaint in the Gray case, except in so far as the statement of the injuries

The Cleveland, etc., R. W. Co. *v.* Huddleston.

of appellee is concerned. The action of the court in overruling the demurrer to the complaint in the case at bar is therefore approved.

Previous to the trial of the cause, by order of the court, the examination of the appellee, as party plaintiff, was taken by the appellant. In this examination, amongst other things, the appellee testified that he was suffering from albumen and sugar in the urine as a result of the injury complained of. Thereafter, on the 5th day of February, 1896, fifteen days before the opening of the trial, the appellant filed in open court the following verified motion:

"The defendant in said cause comes now by her attorney and shows to the court that it is alleged and claimed, and, as it is informed and believes, will be alleged and claimed upon the trial of said cause, that the plaintiff's injuries consist of a dislocation of the kidney, producing the secreting of albumen and sugar in the urine. That the defendant has no means of meeting any proof that the plaintiff might adduce upon the subject of his condition in this respect. The defendant therefore asks that the plaintiff be ordered and required to produce in court, at such time, at, or in advance of, the trial, as the court may order, specimens of his urine, that it may be examined and analyzed by proper experts and physicians, with a view to determine whether or not he is suffering from the conditions above stated, and that the defendant be required to file with such specimens his sworn affidavit that the specimens produced is urine voided by him."

The appellee objected to the granting of the request thus made, whereupon the court, over the objection and exception of appellant, overruled the motion. This, we think, was error. We do not see that the making of the order as requested would

have been any invasion of the personal rights of the appellee, and, if not, there can be no reason why appellant should be deprived of the use of any evidence which might result from such proposed analysis.

The ruling of the court, it seems, was based upon decisions of this and other courts denying the right of a court to subject a party to an examination of his person for the purpose of enabling the adverse party to secure desired evidence. Such examination is held to be an invasion of the rights of the person, an indignity to which, in the absence of a positive statute, no one should be subjected against his will.

In *Kern* v. *Bridwell*, 119 Ind. 226, which was an action by an unmarried woman for slander, where it was alleged that the defendant had spoken of the plaintiff as a whore, and that she had become pregnant and had suffered an abortion to be procured upon her, it was held that the defendant was not entitled, under a plea of justification, to an order requiring the plaintiff to submit her person to an examination by medical experts.

In the *Pennsylvania Co.* v. *Newmeyer*, 129 Ind. 401, which was an action for damages alleged to have been received at a railroad accident, the trial court refused to require the injured party to submit to an examination of his person by surgeons to be appointed by the court for that purpose; and that ruling was approved by this court.

The court there quoted from *Union Pacific R. W. Co.* v. *Botsford*, 141 U. S. 250, 11 Sup. Ct. 1001, that: "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. * * * The inviolability of the person is

as much invaded by a compulsory stripping and exposure as by a blow.   To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country." See, also, *Sioux City, etc., R. R. Co.* v. *Finlayson,* 16 Neb. 578, 49 Am. Rep. 724, and note, 20 N. W. 860.

In the three cases first above cited, which are those relied upon to sustain the action of the court in overruling the motion here under consideration, it will be seen that it is the trespass upon the sacred privacy of the person that the law refuses to sanction.   But urine which has passed from the body is no part of the person.   It is a lifeless substance, separated forever from the individual; and it can be no more indignity to his person to subject such substance to examination and analysis than it would be to require a like examination of the cast off clothing of the same individual.

It is said in 4 Elliott on Railroads, section 1700, that "The clothing of one who is killed by the alleged negligence of a railroad company may, it seems, be exhibited in evidence where it tends to establish such negligence as the cause of his death, and other 'real evidence,' such as defective machinery, iron rails, and the like may be introduced and exhibited to the jury in a proper case."   And see 2 Elliott Gen. Prac., sections 682, 685.

Counsel have cited no authority directly in point to show that it is any violation of personal right to compel the production in court of a specimen of urine. Appellee himself could not have considered it any indignity to him to furnish such specimen to be used in evidence; inasmuch as he voluntarily produced a specimen for the use of his counsel, which was analyzed by physicians selected by them, and the evidence then detailed in court. Why he should have the right to use such evidence, and yet, on the plea of indignity to his person, refuse to allow the adverse party to use the same evidence, is not at all clear. See *Haynes* v. *Trenton*, 123 Mo. 326, 27 S. W. 622.

It would seem that the case is not essentially different from that of a like examination preparatory to life insurance, where it has never been considered that insurance companies have passed the bounds of propriety in requiring such opportunity to learn the physical condition of an applicant for insurance. It is not in any way a question as to exposure of the person or invasion of privacy. The production of the urine, accompanied by an affidavit that it was voided by appellee, does not involve any exposure of the person.

Courts of equity, as said in 2 Rice Ev., section 416, proceed on the principle that it is against conscience that a party having knowledge, or the means by which knowledge could be obtained, of facts material to the litigation, should obtain an advantage to himself at the sacrifice of the development of truth, and consequent working of injustice by withholding and concealing such knowledge and means. "Upon this principle," it is added, "a discovery of books, papers, and documents is ordered," and "the principle clearly

covers and authorizes the compulsory discovery, in a proper case, of things or substances other than books, papers, etc."

As therefore no indignity against the person of the appellee was involved, we are unable to discover any sufficient cause why he should not have been required to produce in court urine asked for by the motion. All questions as to the right of privacy and the sacredness of the person being eliminated, every reason for exclusion of the proposed evidence disappears.

Nor was there anything unfair in the manner of the request. The appellant did not ask that the urine should be given to appellant's counsel, or to its experts or physicians. The request was that the appellee "produce in court, at such time, at, or in advance of the trial, as the court may order, specimens of his urine, that it may be examined and analyzed by proper experts and physicians." That was ample protection to appellee from any danger of manufactured evidence. All would be under direction of the court. The court would determine who were "proper experts and physicians."

The request was certainly a reasonable one. It was in the interests of a fair and impartial trial. If the analysis made and testified to by appellee's experts were correct, the analysis to be made by experts appointed by the court would but confirm it. If, however, there should be found error in the analysis already made, it was but right that such error should be disclosed, to the end that justice might be done between the parties.

Other questions discussed by counsel need not, as we think, be considered, as they may not arise on another trial.

Judgment reversed, with instructions to grant a. new trial.

Monks, J., took no part in the decision of this case.