### MUTUAL LIFE INS. CO. OF NEW YORK v. GRIESA et al.

(Circuit Court, D. Kansas, First Division. September 14, 1907.)

No. 8,560.

1. CANCELLATION OF INSTRUMENTS—INSURANCE POLICY—EFFECT OF DEATH OF INSURED.

A suit in equity cannot be maintained in a federal court for the cancellation of a life insurance policy on the ground that it was obtained by fraud, where the bill is not filed until after the death of the insured.

2. INSURANCE—ACTION ON POLICY—JURISDICTION OF EQUITY.

The fact that a life insurance policy gives the beneficiaries the option to receive payment in bonds or in cash does not give them the right to a decree for specific performance by delivery of the bonds, so as to render a suit on the policy one of equitable cognizance, nor give the insurer the right to sue in equity for cancellation of the policy after the death of the insured.

3. SAME—PARTIES—ACTION BY EXECUTORS.

Under Gen. St. Kan. 1905, § 4895, which provides that an executor may bring an action without joining with him the person for whose benefit it is prosecuted, executors may sue on a policy of insurance on the life of their testator, payable to his estate, without joining the heirs or legatees, though the policy is at their option payable in bonds, and such bonds are specifically bequeathed by the will.

4. DISCOVERY—INSPECTION OF INANIMATE OBJECTS.

Rev. St. § 724 [U. S. Comp. St. 1901, p. 583], provides only for requiring the production of books or writings in the possession of a party, and does not authorize a federal court in an action at law in general to order the production or inspection of inanimate objects.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 108.]

5. DEAD BODIES—POWER TO ORDER EXHUMATION—RIGHTS OF WIDOW.

A court has no power to order the exhumation of a dead body in an action at law to which the widow of the deceased, who has the right to control the body, is not a party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Dead Bodies, §§ 1, 2.]

6. DISCOVERY—IN EQUITY—SCOPE OF REMEDY.

A bill of discovery may be maintained in a federal court of equity in aid of a law action either pending or in immediate contemplation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 9.]

**7. SAME—IN AID OF DEFENSE TO ACTION ON INSURANCE POLICY—EXHUMATION OF BODY.**

Where an action at law is pending to recover on a life insurance policy shown to have been obtained under circumstances indicating fraud, and one of the defenses is that the insured committed suicide by poison, which would avoid the policy by its terms, a court of equity has power in aid of such defense to order the body to be exhumed for examination.

[Ed. Note.—Suicide as a defense to a life policy, see notes to Ætna Life Ins. Co. v. Florida, 16 C. C. A. 623; Fidelity & Casualty Co. v. Egbert, 28 C. C. A. 284.]

In Equity. On rehearing.

John S. Dean, Bishop & Mitchell, and Ferry & Doran, for complainant.

Geo. J. Barker, C. F. Hutchings, and S. A. Riggs, for defendants.

SMITH McPHERSON, District Judge. This bill in equity is based largely on the alleged right to cancel a policy of life insurance for $100,000 issued in December, 1906, payable to the estate of Lucius H. Perkins, the insured, who died June 1, 1907. The policy was issued on annual premiums to be paid of $6,900, the first of which was paid to the company in cash by the agent, who took the note of the insured due a few days after his death. At about the same time the insured applied to other companies for other insurance of more than $1,000,000. Part of these applications were refused, and some issued and afterwards canceled, which denials and cancellations were concealed from complainant when the policy in suit was issued. When he died, there were policies apparently in force aggregating $540,000, calling for annual premiums of about $30,000, several times more than his income, and which he could not pay without converting his estate into money, and then only for a few years. About the time he was taking out this policy he was in correspondence with a chemist as to the uses and effects of poisons, learned by some of the companies, which denied the applications, but unknown to this complainant until after the death of the insured. The day of his death he purchased morphine poison, and that evening fell from the roof of his house, and when reached was unconscious, remaining in that condition until his death, a few hours thereafter. This bill of complaint was not filed until after the death of the insured. Many other allegations of fraud are made. Suffice it to say that the agreement of the insured in his application was that the policy was to be void in case of suicide within two years, and aside from that such frauds are alleged as to bring the case within the case of Ritter v. Insurance Company, 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693, and which allegations, if true, prevent a recovery. To this bill a demurrer has been interposed, and a plea to the jurisdiction filed mainly on the ground that the case is not cognizable in equity; the contention being that the company has a plain, adequate, and complete remedy at law by defense to an action on the policy.

Whatever the rule may be in the several states and England, the rule now is in the United States courts that where the policy is for the payment of money, and is obtained by fraud, that the cause is not cognizable in equity when the bill is not filed until after the death of

the insured. Cable v. Insurance Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; Riggs v. Insurance Co., 129 Fed. 207, 63 C. C. A. 365. Such a bill in equity can be maintained if brought in the lifetime of the insured, and his subsequent death will not abate the action. Life Insurance Co. v. Blair (C. C.) 130 Fed. 971. It is contended that, as the policy was for the delivery of bonds, the estate has the right to a decree for specific performance of the contract or policy, and that, being an action in equity, the company has the right to have the controversy determined on the equity side of the docket. The policy makes certain recitals on the back thereof of binding effect, one of which is as follows:

"When this contract matures, the beneficiary will be entitled, in lieu of settlement by delivery of the several $1,000.00 bonds herein provided for, to receive either (1) the whole amount in cash, or (2) any part thereof in bonds, and the remainder in cash. Should either of such settlements be made, the amount of cash payable will be computed at $1,305 in lieu of each $1000 bond undelivered."

The answer to this is that the estate does not have the right to coerce the delivery of the bonds by a decree for specific performance. The estate has the right of election to either take the bonds, or, in lieu thereof, money calculated as above stated, as in the policy set forth. But, aside from that, the facts are that the company repudiates the policy, and refuses to deliver the bonds. And when the company refused to deliver the bonds a mere naked money demand was created, if the policy is valid. Such is the recently announced rule by the Supreme Court, after reviewing all the authorities, English and American. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. Nearly all the cases upholding the right of specific performance of contracts are with reference to real estate. Hyer v. Richmond Company, 168 U. S. 471, 480, 18 Sup. Ct. 114, 42 L. Ed. 547; City of Memphis v. Brown, 20 Wall. (U. S.) 289, 304, 22 L. Ed. 264; Marble Company v. Ripley, 10 Wall. (U. S.) 339, 356, 19 L. Ed. 955; The Mechanics Bank v. Seton, 1 Pet. (U. S.) 304, 305, 7 L. Ed. 152. And such actions cannot be maintained on contracts relating to personal property, except when such personal property has a value other than a money value, such as an heirloom, family relic, a present from a friend, and the like. But in this case the bonds called for by the policy have no value, and are of no concern other than their money value, the ascertainment of which is a mathematical proposition. And without doubt this company will promptly pay in money any amount adjudged by final judgment. So that the estate has no claim that can be enforced, aside from its money demand for the value of the bonds provided for in the policy, and that money demand is cognizable in an action at law, in which both parties have a plain, adequate, and complete remedy.

The insured left a will, which has been admitted to probate, from which it appears that the 100 bonds provided for by the policy were specifically bequeathed, some to the widow, and the others to the heirs. As this was an assignment of the bonds to the several beneficiaries, the contention is that there will be a multiplicity of suits, which can and should be avoided by a bill in equity. The general rule is that the

executors take the legal title to all personalty, sue for and recover the same, convert the same into money, and make distribution thereof under the will, pursuant to the orders of the probate court. Such is the rule in Kansas as appears from section 4895 of the General Statutes of Kansas (1905 Ed.), which is as follows:

"An executor, administrator, guardian, trustee of an express trust, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted."

So that there can and will be but one action to recover the money called for by the policy. Soon after this bill in equity was filed, the executors herein brought an action at law on the policy; they alone, and properly so, being the only plaintiffs.

The insurance company made application in both cases for an order to exhume the body of the insured. Both applications were heard together on the same evidence. The executors protested against making the order in the action at law for two reasons: (1) Section 724 of the Revised Statutes [U. S. Comp. St. 1901, p. 583] provides only for the production of papers and writings, when such was formerly allowable under the chancery practice. And it is believed that such contention is correct, and that a court of law has no power to order the production or inspection of inanimate objects in the possession or control of a party in advance of the trial. This court is mindful of the statement in the opinion of the Circuit Court of Appeals for this circuit in the case of Penney v. Central Coal Company, 138 Fed. 769, 775, 71 C. C. A. 135. The point was not discussed, and no authorities were cited. It was a mining case. Giving full weight to that decision, it must be limited to mining cases only, and then only, as this court believes, to cases arising in states having statutes providing for such inspection. (2) But, whatever the law is as to the point noticed, there is an insurmountable objection to making the order in the law action in the case now before the court; and that is that the widow is not a party to the law action, and cannot be made a party to the law action. She is a defendant to the action in equity. The widow has the control of the body of her deceased husband, and the executors do not have. Griffith v. Railroad (S. C.) 24 Am. Law Reg. (N. S.) 586, and other cases cited in note; Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Young v. College, 81 Md. 358, 32 Atl. 177, 31 L. R. A. 540; Petigrew v. Petigrew, 207 Pa. 313, 56 Atl. 878, 64 L. R. A. 179, 99 Am. St. Rep. 795. The annotations to these cases show that proposition cannot be in doubt, and counsel herein agree to its correctness; so that, if the order is made, it must be in the action in equity.

In nearly all cases, with but few privileged exceptions, and a few prohibitions, all persons are competent witnesses. And by reason of section 724 of the Revised Statutes, and by reason of interrogatories calling for answer that may be annexed to pleadings, the old-time right of discovery is but occasionally resorted to. But it is not obsolete. And it is not correct to say, as is contended by respondents' counsel, that there can only be a discovery directed to aid an action then pending. It is allowable in an action immediately contemplated, as well as in an action pending. And the law action was not only contemplated,.

156 F.—26

but under the terms of the policy could not long be delayed, and, in fact, was soon brought. Perkins fell from the roof of his house and from a place he was directed not to go by reason of the danger. He alighted on his feet on soft ground. Apparently no bones were broken. He was unconscious. His eyes gave some evidence of morphine poison, The coroner expressed the opinion that it was suicide. The family physician, who was present a few minutes after the fall, has not been called as a witness, and the company probably cannot call' him. No member-of the family has been called as a witness. He bought morphine on that day, giving an insufficient reason therefor, and the morphine has not been produced, and counsel for defendants professionally state that it cannot be found. When he accepted the policy, he objected to the suicide clause. He was heavily insured, and for more than he could carry, as disclosed by the evidence now before the court. He had paid no money therefor, and his note for the first premium was about due. Whether he suicided is not now a question for decision; but on such a showing, if the body cannot be exhumed, it is because the court cannot and should not compel the disclosure of the real truth. If such disclosure cannot be made, it is because of the right of one party to disclose the truth, if believed advantageous, and to conceal it if believed harmful, and that ought not to be a rule for the guidance of courts. And the only objection aside from that as to the power of the court is one of sentiment, as if sentiment should control in the administration of justice. In Union Pac. R. Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, the Supreme Court held that a physical examination of a party could not be coerced, on the ground that it was equivalent to an assault without lawful authority. The force of that holding is lessened by the later case of Railroad v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721. Although this later case was under a statute, it is not readily perceived how a statute can justify an assault. But those cases were with reference to living persons. And, while the Botsford Case is an authority, it is only so as to a living person. And as to living persons such is not the rule in many states. The following cases sustain the right of a court to compel the exposure of person for a physical examination: Schroeder v. Railroad, 47 Iowa, 375; Railroad v. Childress, 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808, 14 Am. St. Rep. 189; Shepherd v. Railroad, 85 Mo. 629, 55 Am. Rep. 390; Railroad v. Hill, 90 Ala. 71, 8 South. 90, 9 L. R. A. 442, 24 Am. St. Rep. 764; White v. Railroad, 61 Wis. 536, 21 N. W. 524, 50 Am. Rep. 154; Railroad v. Thul, 29 Kan. 466, 44 Am. Rep. 659; Railroad v. Palmore, 68 Kan. 545, 75 Pac. 509, 64 L. R. A. 90; Sibley v. Smith, 46 Ark. 275, 55 Am. Rep. 584; Miami Co. v. Bailey, 37 Ohio St. 104; Lane v. Railroad, 21 Wash. 119, 57 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821; Wanek v. Winona, 78 Minn. 98, 80 N. W. 851, 46 L. R. A. 448, 79 Am. St. Rep. 354; Graves v. Battle Creek, 95 Mich. 266, 54 N. W. 757, 19 L. R. A. 641, 35 Am. St. Rep. 561; South Bend v. Turner, 156 Ind. 418, 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200; Brown v. Railroad, 12 N. D. 61, 95 N. W. 153, 102 Am. St. Rep. 564; Railroad v. Huddleston, 151 Ind. 540, 46 N. E. 678, 36 L. R. A. 681, 68 Am. St. Rep. 238; Bell v. Allen (Ky.) 44 S. W. 90. The following authorities deny the right of a

court to order a physical examination of a person: Parker v. Enslow, 102 Ill. 279, 40 Am. Rep. 588; Railroad v. Rice, 144 Ill. 227, 33 N. E. 951; City v. McNally, 227 Ill. 14, 81 N. E. 23; McQuigan v. Delaware, L. & W. R. R. Co., 129 N. Y. 50, 29 N. E. 235, 14 L. R. A. 466, 26 Am. St. Rep. 507; Stack v. Railroad, 177 Mass. 155, 58 N. E. 686, 52 L. R. A. 328, 83 Am. St. Rep. 269; U. P. Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734; Austin, etc., Railroad v. Cluck, 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 495, 104 Am. St. Rep. 863. These cases contend strongly that a court has not the common-law power to order a physical examination of the body, and that such order cannot be made unless authorized so by statute. Thus it will be seen that the great weight of authority sustains the power of the court to order a physical examination. The Indiana cases were decided later than the Botsford Case. The recent scholarly and timely work on Evidence by Wigmore (sections 2220 et seq.) is to the point, that sentiment and modesty, real or affected, must not stand in the way of the court in compelling parties to disclose the exact truth, and to not allow one party to the litigation to make known the facts, or suppress them, as the interest of such party may suggest. And along the same lines is the Preliminary Treatise on Evidence by Prof. Thayer (1898) of Harvard, and Two Centuries Growth of American Law (1701-1901) by the Faculty of the Yale Law School, under the title of "Evidence." And see the following authorities as to the power of a court of chancery as to evidence: Reynolds v. Burgess, 71 N. H. 322, 51 Atl. 1075, 57 L. R. A. 949, 93 Am. St. Rep. 535, for the inspection of machinery; Hensey v. Langdon (C. C.) 80 Fed. 178, for the inspection of a mine; 1 Pomeroy, Equity, §§ 191, 225; 2 Story, Equity, §§ 689, 690. Can any one doubt but that all sentiment would dissipate, and all objection would vanish, if it were necessary for the estate to make the showing in order to recover the large sum of money involved? And why should it be optional with one party to say what part of the truth shall be made known, and what part kept from the court?

The order will be that the marshal of this district will exhume the body. The court will appoint a pathologist to examine the body, to the end that the evidence may be had as to whether the fall killed the insured. A chemist will be appointed to determine whether he died by morphine poison. The results of their efforts ought to materially aid the court in arriving at the truth. And such an order is made because this court is of the opinion that it cannot be made in the action at law, but holding that it is within the general powers of a court of equity, and that such an order is in the furtherance of justice.