# CASES DETERMINED

## BY THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI

### AT THE

## APRIL TERM, 1917.

---

## THE STATE ex rel. AMERICAN MANUFACTURING COMPANY v. THOMAS L. ANDERSON, Judge.

### In Banc, April 9, 1917.

1. **CIRCUIT COURT: Power to Order Examination of Premises for Evidence.** The circuit courts of Missouri are courts of original and general jurisdiction, possessing practically the same powers as *nisi prius* courts in England, among which was the power to permit plaintiff and his counsel, in a civil suit against a corporation, to visit defendant's manufacturing plant, and enter upon its premises, with experts and photographers, for the purpose of inspecting and measuring the same, and making drawings and taking photographs to be used as evidence in the trial of said action; and such power was not taken away by the constitutional provisions against unreasonable search and seizure, nor is a legislative statute necessary to the exercise of such power by the court.

2. ———: ———: **Invasion of Property Rights: Similar to Examination by Physicians.** The power of the court to permit plaintiff, in a personal injury action based on a charge of an unsafe place in which to work or unsafe tools, to visit the factory of the company causing the injury, with proper persons and on a proper occasion, for the purpose of obtaining photographs or drawings to be used in the trial of the case, is based on the power of the court to know the facts which determine the plaintiff's right to recover and defendant's liability, and if reasonably exercised is not an invasion of

533

property rights, but is similar to the power of the court to compel the plaintiff suing for personal injuries to submit to an examina-. tion by physicians appointed by the court, and for a stronger reason should be upheld, since personal rights are superior to property rights, and their violation a more serious matter.

3. ———: ———: Based Upon Inherent Relationship of Employment. Since the law requires the employer to furnish his employees a reasonably safe place in which and reasonably safe appliances with which to work, and a violation of either duty is a basis for a legal action for damages for personal injury to the employee, the law must either impose an implied agreement upon the employer, arising out of the contractual relation, that the employee, in case of injuries due to failure to provide such safety, shall have the right, at a proper time, in a reasonable manner and in company with proper persons, to visit and inspect such place and appliances, in order that they may testify as to their condition, or the law should expressly impose upon the employer the duty to expose to the injured employee and his experts, at a proper time and in a reasonable manner, the place where and the tools by which he was injured.

## Prohibition.

WRIT DENIED.

*Percy Werner* for relator.

(1) The only provision in our Code of Procedure, conferring any authority upon our circuit courts similar to that attempted to be exercised here, is Sec. 1944, R. S. 1909, which reads: "Every court or judge thereof shall have power to compel any party to a suit, pending therein to produce any books, papers and documents in his possession or power, relating to the merits of any such suit, or of any defense therein." If the order of the court in the instant case goes further than this provision of our code, it is inconsistent with the code and the court exceeded its powers in making it. *Expressio unius, exclusio alterius.* Cook v. Mfg., 29 Hun, 641; Ansen v. Tuska, 24 N. Y. Sup. Ct. 663; Kennedy v. Nichols, 68 N. Y. S. 1053; Auerbach v. Railroad, 73 N. Y. S. 118; Sutter v. City of New York, 85 N. Y. S. 990; Pina Mayo-Sisal Co. v. Mfg. Co., 105 N. Y. S. 482; Wil-

son v. Collins, 109 N. Y. S. 660; Danahy v. Kellogg, 126 N. Y. S. 444; Beyer v. Transit Co., 124 N. Y. S. 463; Martin v. Elliott, 106 Mich. 130; Newberry v. Carpenter, 31 L. R. A. 163; Rogers v. Hansen, 35 Iowa, 283; State v. Hancock, 148 Mo. 488.

*John C. Robertson* for respondent.

(1) The order made by the circuit judge was a lawful one and he had full authority therefor under the laws of this State and the decisions of the appellate courts of this and other States. Clark v. Dredging Co., 14 Cal. App. 414; Haynes v. Themlow, 123 Mo. 336; Paul v. Railroad, 82 Mo. App. 504; Marler v. Springfield, 65 Mo. App. 302; 3 Wigmore on Evidence, secs. 2162, 2194, 2221; 3 Jones on Evidence, sec. 406; Crosby v. Potts, 8 Ga. App. 463; Reynolds v. Burgess, 71 N. H. 332; Granger v. Ins. Co., 57 Miss. 308; Commonwealth v. Twichel, 1 Brewster (Pa.), 551; Sullivan v. Nicoulin, 113 Iowa, 76; Earl of Macclesfield v. Davis, 3 Ves. 16; Hensley v. Langton, 80 Fed. 178; Insurance Co. v. Grieson, 156 Fed. 398. (2) The old equity bill of discovery has been abolished in this State. Larimore v. Bobb, 114 Mo. 453; Carr v. Daues, 46 Mo. App. 356; Tyson v. Farm Home S. Co., 156 Mo. 594; Strode v. Frommeyer, 115 Mo. App. 220; Ex parte Brockman, 233 Mo. 135; Bacon on Mo. Practice, sec. 135. (3) Prohibition will not be granted as a substitute for an appeal or writ of error. State v. Evans, 184 Mo. 642; Schubach v. McDonald, 179 Mo. 182; State v. Hirzel, 137 Mo. 435; State ex rel. v. Scarritt, 128 Mo. 331; State ex rel. v. Klein, 116 Mo. 259; State ex rel. v. Smith, 104 Mo. 419.

WOODSON, J.—This is an original proceeding brought in this court by the relator, seeking to prohibit Hon. Thomas L. Anderson, judge of the circuit court of the city of St. Louis, from enforcing an order theretofore made by him in the case of Kalenik Zasemowich v. American Manufacturing Company, a cor-

poration, the relator here, requiring defendant to permit plaintiff and his counsel to visit its plant, to enter upon its premises with experts and photographers to inspect, measure, make drawings and take photographs of certain portions of its plant and machinery, for the purpose of being used as evidence in said case.

The preliminary writ was issued, and upon the incoming of the return the relator asked for judgment of the pleadings.

There is no question made as to the order having been properly made by the court, after due notice having been given to the defendant, or that the order is not a reasonable one, provided the court had the power and authority to make it.

I. A foreword may not be out of place here: Under the common law and statutes of England, the person, property and premises of the individual were subject, practically unlimited, to search and seizure, which became so oppressive and intolerable that when the people of this country founded the various states and nation, sooner or later they provided in the Constitutions thereof, that the people should be secure in their persons, houses, papers and effects, against unreasonable search and seizure, etc. [Fourth Amendment of the Constitution of the United States; Sec. 11, art. 2, Constitution of Missouri.]

*Right of Search and Seizure.*

There is but a single question presented by this record for discussion, and that is, has the circuit court the inherent power to make and enforce the order mentioned, unaided by statutory enactments?

Counsel for relator states his position in this language:

"We desire the court to understand at the outset that we make this application solely and only upon the ground that we believe that, under the law of this State as it exists at present, a circuit court is without

**Power to Order Examination of Premises for Evidence.** power or authority to require compliance with any such order. We say this that our position may not be misunderstood. We are free to admit that enlightened procedure may demand statutory provision touching the matter in dispute. We submit, however, that until the Legislature chooses to act, the trial courts are without legal power or authority to make or enforce such order as is attempted in this case."

It should be remembered that the circuit courts of this State are courts of original and general jurisdiction, practically the same as the *nisi prius* courts of England; and it goes without saying that those courts possessed and exercised that power and authority with practically no limitations. In fact, as previously suggested, it was the abuse of that judicial authority that lead the people of this country to adopt the constitutional provisions limiting the legislative and judicial authority in the regard stated; and if it was not for said constitutional limitations upon the circuit courts of this State, they would to-day possess the same untrammeled authority in that regard that the *nisi prius* of England possessed in earlier days.

Counsel for relator does not seem to question the soundness of this line of thought, but seems to be laboring under the impression that the constitutional limitations before mentioned completely shear the courts of the country of all authority to make and enforce orders of the character involved in this controversy, and that all the power they possess is created by statute, enacted after the adoption of said constitutional provisions.

There are some cases in this country which seem to lend support to that theory of the law but they are not based upon principle nor supported by the weight of authority. The cases so holding and cited

by counsel for relator are the following: Cooke v. Manufacturing Co., 29 Hun, 641; Ansen v. Tuska, 19 Abb. Pr. 391; Kennedy v. Nichols, 68 N. Y. S. 1053; Auerbach v. Railway, 73 N. Y. S. 118; Sutter v. City of New York, 85 N. Y. S. 989; Pina Maya-Sisal Co. v. Mfg. Co., 105 N. Y. S. 482; Wilson v. Collins, 109 N. Y. S. 660; Danahy v. Kellogg, 126 N. Y. S. 444; Beyer v. Transit Development Co., 124 N. Y. S. 463; Newberry v. Carpenter, 31 L. R. A. (Mich.) 163; Rogers v. Hanson & Co., 35 Iowa, 283. The New York cases are directly in point, but none of them is from a court of last resort, and consequently have but little weight.

The case of Newberry v. Carpenter, Circuit Judge, 31 L. R. A. 163, was a mandamus proceeding in which the relator asked to have the circuit judge required to vacate an order depriving the complainant of the possession and power of control over a certain boiler and some machinery owned by her, but in possession of the public authorities, for the purpose of use in connection with the criminal prosecution. There had been an explosion in the building owned by Miss Newberry, and one Johnson, the engineer, had been arrested and charged with manslaughter on account of alleged criminal carelessness in managing the boilers, by which the explosion occurred and thirty-seven people were killed and others were injured. The police took charge of the premises, and the boiler and premises and engine were by the circuit court ordered into the custody of the police department of the city of Detroit. The relator, Helen H. Newberry, who was not a party to the criminal prosecution, thereupon brought a suit in the Supreme Court in which she sought to mandamus the circuit judge to vacate the above mentioned order. Her counsel set forth in his brief that she was threatened with civil suits for damages on account of the accident. The Supreme Court reviewed the matter carefully and arrived at the conclusion that the circuit judge had no authority

or power to make such an order, and therefore award-ed the writ of mandamus requiring the circuit judge to set his order aside.

. In Rogers v. Hanson & Co., 35 Iowa, 283, the court said, page 284:

"Before answering, the defendants moved the court for permission to use the attached machine [thresh-ing machine] for the purpose of trying its capacity to do such work as it was warranted to do. This motion was supported by an affidavit that the sheriff was will-ing to have the machine so used and that the attorney of plaintiff would not consent. The court overruled the motion and the defendants excepted. They now assign this ruling as error. There is no principle of law which renders the granting of defendants' re-quest obligatory upon the court . . . It seems too clear for argument that the court did not err in re-fusing to take it from the custody of the law and place it under that of the defendants."

In State v. Hancock, 148 Mo. 488, this court said (p. 492):

"After the evidence was closed, but before the case was submitted to the jury, defendant moved the court that the jury be taken to the room where the homicide is alleged to have been committed, to make a personal inspection of it, which was denied, and this also is one of the grounds assigned in the motion for new trial. In the absence of statutory enactment pro-viding for such a course there is no authority in the trial of a criminal case for a view of the premises where the crime is alleged to have been committed (12 Am. & Eng. Ency. Law, 368), and even when the view is authorized by statute it rests altogether in the sound discretion of the court."

The last three cases considered are of doubtful application, but if authority for the contention of coun-sel for relator they bear so remotely upon the question here under consideration that they are by no means convincing.

Upon the other hand counsel for respondent cite and rely upon the following authorities in support of his position: Clark v. Tulare Lake Dredging Co., 14 Cal. App. 414; Haynes v. Trenton, 123 Mo. l. c. 336; Paul v. Ry. Co., 82 Mo. App. l. c. 504; Marler v. Springfield, 65 Mo. App. l. c. 302; 2 Wigmore on Evidence, sec. 1162; 3 Wigmore on Evidence, secs. 2194 and 2221; 3 Jones on Evidence, sec. 406; Crosby v. Potts, 8 Ga. App. 463; Reynolds .v. Fibre Co., 71 N. H. 332; Grangers' Ins. Co. v. Brown, 57 Miss. 308; Commonwealth v. Twitchell, 1 Brewster (Pa.), 551; Sullivan v. Nicoulin, 113 Iowa, 76; Earl of Macclesfield v. Davis, 3 Ves. & B. 16, 35 Eng. Rep. 385; Henszey v. Coal Min. Co., 80 Fed. 178; Mutual Life Ins. Co. v. Griesa, 156 Fed. 398.

In the case of Clark v. Tulare Lake Dredging Co., supra, the Supreme Court of California, in discussing this question, said:

"Exception No. 16 involves the action of the court in making an order that a witness for plaintiff be allowed to inspect or examine the machinery. It is contended that the court acted in excess of its authority in making this order and thus committed error which was damaging to the defendant's rights.

"There is, so far as we know, no express provision of law authorizing the course adopted by the court, but every court has certain inherent power—power which, exercised within reasonable and proper limits, authorizes it to go beyond its express powers, where the interest of justice imperatively demands such a course. Moreover, by section 128, subdivision 5, of the Code of Civil Procedure, every court is in general language clothed with full control and power over every person connected with a judicial proceeding before it, in so far as said proceeding is concerned, and we fail to see in the action of a court compelling the production of any relevant and competent testimony which will make clear or tend to make clear the truth as to a disputed question of fact anything in contraven-

tion of either the letter or spirit of subdivision 5 of that section of our code.

"We perceive no distinction between the proposition here and the one presented and discussed in the case of Johnston v. Southern Pacific Co., 150 Cal. 535, 540, where in an action for personal injuries the trial court was appealed to by the defendant for an order allowing the plaintiff to be examined as to her injuries and the effect thereof by physicians of the defendant's own choosing, testimony bearing upon that subject having been given by physicians who had been employed by and were introduced as witnesses for plaintiff. The court denied this application upon the ground that it had no power to make the order, and on appeal the Supreme Court held that the ruling was erroneous; that the court was authorized to make said order by virtue of the provisions . . . of the Code of Civil Procedure, and quotes approvingly from the case of Wanek v. City of Winona, 78 Minn. 98. . . .

"As stated, we see no difference in principle between the action of the court in the case at bar in ordering defendant to permit an expert witness for plaintiff to examine its machinery, and the order which the Supreme Court declares it was prejudicial error to refuse to make in Johnston v. Southern Pacific Co., supra. . . .

"Our conclusion is that the court in no manner or degree transcended its power or authority in ordering defendant to allow plaintiff's expert to examine the machinery."

While it is true the California Statutes, sections 128-129, provided that "the court shall have power to control in furtherance of justice the conduct of its ministeral officers and of all persons in any manner connected with any judicial proceeding before it in every manner appertaining thereto," yet the court will see that the power conferred is merely declaratory of the power which our own circuit courts inherently have.

The inherent right of courts to make such an order was presented to the Supreme Court of the United States in the case of Montana Co. v. St. Louis Mining Co., 152 U. S. 160, a case in which an order was made to inspect a mine. The court in holding that an order to allow such an inspection was proper, quoted the following with approval from Thornburgh v. Savage Mining Co., 7 Morrison's Min. Rep. 667:

"That a court of equity, having jurisdiction of the subject-matter of the action, has the power to enforce an order of this kind will not be denied; and the propriety of exercising that power would seem to be clear, indeed, in a case where, without it, the trial would be a silly farce. Take as an illustration the case at bar. It is notorious that the facts by which this controversy must be determined cannot be discovered except by an inspection of works in the possession of the defendant, accessible only by means of a deep shaft and machinery operated by it. It would be a denial of justice, and utterly subversive of the objects for which courts were created for them to refuse to exert their power for the elucidation of the very truth—the issue between the parties. Can a court justly decide a cause without knowing the facts? And can it refuse to learn the facts?"

In the case of Little Rock Gas & Fuel Co. v. Coppedge, 172 S. W. (Ark.) 885, the court held that it was discretionary with the trial court whether it should require the defendant, injured by escaping gas, to allow the gas company to experiment in the house as to the effect of the escaping gas.

In the case of Byrd. Irr. Co. v. Smythe, 146 S. W. (Tex. Civ. App.) 1064, it was held that a court of equity, by virtue of its ancillary powers, may grant orders for the inspection of property, where it is shown to be necessary for the proper exercise of judicial functions, or for the attainment of justice.

The question of trespass incident to carry out such an order is very ably discussed in the case of Reynolds

v. Fibre Co., 71 N. H. 332, where the court speaks as follows:

"The slight infringement of the right of property that is involved in an inspection of it under an order of a court of equity is justified by 'due process of law,' or 'the law of the land' and is in no sense a violation of the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.

"A consideration of the origin of the equitable remedy for discovery and of its nature and purpose leads to the conclusion that it may be employed to compel the production of personal chattels as well as books, deeds, letters and other documents for inspection and examination in aid of an action at law and the foregoing cases confirm this conclusion. . . . Justice requires that the plaintiff shall also have an opportunity to have the strap examined by persons in whose skill and scientific knowledge she has confidence. There cannot be a fair trial of the case unless such opportunity is given to the plaintiff. Indeed, it may be that she cannot establish her right—if she have one—without having the opportunity." [See also, Bovill v. Moore, 2 Coop. C. C. 56.]

The principle was also recognized in the case of Henszey v. Coal Min. Co., 80 Fed. 178, and Mutual Life Ins. Co. v. Griesa, 156 Fed. 398.

This subject is throughly discussed by 3 Jones on Evidence, section 406.

In the case of Mutual Ins. Co. v. Griesa, supra, which was a bill in equity to cancel a policy of life insurance, the deceased was killed by falling from the roof of his house. The issue was whether he had taken morphine just previously, with intent to suicide thereby, and had deliberately thrown himself from the roof to conceal the suicide. The insurer applied for an order to exhume the body of the deceased. The order was granted by Judge McPHERSON, in an able and sensible opinion. The order directed the appointment of a

pathologist to examine for the effects of the fall and a chemist to examine for morphine. The opinion repudiates a privilege protecting from such disclosure.

The last-named case was a suit in equity to cancel the policy. A previous suit was brought at law on the policy where the executors were plaintiffs and the widow was not a party. The insurance company made application for an order to exhume the body. The court held there was an insurmountable objection to making the order in the law action because the widow was not before the court—she not being a party to the action cannot be made a party to the law action; she is a defendant to the action in equity; and that the widow has a control of the body of her deceased husband the executors do not have. In 3 Wigmore on Evidence, p. 2972, sec. 2194, and sec. 2221, will be found a discussion of the question here under consideration. He attempts to get at the underlying principles of the law, and the following conclusion is stated, after a consideration of the different decisions on this point:

"The courts can as well command a witness to let the jury, or qualified experts, inspect his premises, his chattels or his person as to produce his documents. It is not to be supposed that our courts will finally commit themselves to the denial of such a plain dictate of principle and of common sense."

In section 2221, the following will be found:

"The testimonial duty of witnesses in general requires the disclosure of facts in any and every feasible form, including such evidence as is available through inspection of the witness's premises and chattels, either by the tribunal itself, or by other witnesses under order of the court. There is no reason why a party should be privileged more than other persons in this respect. Not only as in the case of corporal exhibition is the absence of such a privilege deducible by implication from the statute making parties compellable generally, but also it may be maintained that no privilege in this respect was ever established at common law."

From an early day this court has uniformly held that in personal injury cases the circuit court has the power, not absolute, but in its discretion, to have the plaintiff's injuries examined by physicians, so that they may testify as to their character and extent, and that such discretion will not be interfered with unless manifestly abused. [Shepard v. Mo. Pac. Ry. Co., 85 Mo. 629; Sidekum v. W., St. L. & P. Ry. Co., 93 Mo. 400; Owens v. K. C., St. J. & C. B. Ry. Co., 95 Mo. 169.]

From the foregoing authorities the following legal deductions may be properly drawn.

First: That the *nisi prius* courts of England having possessed the inherent authority to make and enforce orders similar in character to the one here involved, and our circuit courts being courts of original and general jurisdiction, fashioned, as to jurisdiction and procedure, by the adoption of the common law, after the English courts, they likewise must have the same inherent authority to make and enforce such orders.

Second: That neither the Constitution of the United States nor that of this State was designed to destroy that inherent power of said courts, but was intended to limit and regulate that authority to reasonable search and seizures and thereby abolish the power of the courts to exercise their jurisdiction as instruments of injustice and oppression of the people of the State and Nation.

Third: That said constitutional provisions likewise limited the authority of the lawmaking powers of the country to enact laws providing for reasonable search and seizure of persons and property, which may also regulate the authority of the courts in that regard, but cannot abolish that authority.

Fourth: That under the common law and the constitutional provisions mentioned, said power of the courts equally applies to persons and property.

Fifth: That in this State it is no longer an open question that the circuit courts have the power to order the person of a plaintiff examined, to enable experts to testify as to the character and extent of his injuries.

Bearing these legal propositions in mind and recalling the fact that the law requires the employer to furnish the employee a reasonably safe place in which to work and reasonably safe appliances with which to labor, the violation of either of which results in his injury, the law, in order to do justice between the parties, must either impose an implied agreement on the part of the employer, arising out of the contract of the employment, that in case the former should be injured by the failure of the latter to furnish him with such a place or instrumentalities, the plaintiff might have the right, at a proper time, and in a reasonable manner, in company with proper persons, to visit and inspect said place and appliances, in order to enable them to testify as to their character and condition; or the law should, upon the other hand, in such a case, in the first instance, impose the duty upon the master to expose to plaintiff, and his experts, at a proper time and in a reasonable manner, the place where and the instruments with which he was injured, as a legal corollary to the duty the employee owes to the employer, in a suit for personal injuries, to expose his injuries to the inspection of physicians or other experts selected by the defendant or court, as previously stated.

Both of these powers are inherent in the courts, and are recognized by the State and Federal Constitution, limited, however, to reasonable search, inspection and seizure. No one at this late day questions the the power of the circuit court to order the injuries of a plaintiff complained of, in a damage suit, to be examined by physicians so that they may testify to the character and extent of those injuries, and for stronger reasons the power of the court to make and enforce an order of the character here complained of, should go unchallenged, because one's person and his personal

rights have under all laws, human and divine, been held more sacred, in higher esteem, better shielded and protected than mere property and property rights; so if the defendant in this case is entitled to have the plaintiff's injuries examined by experts, as previously stated, then *a fortiori* the plaintiff should be entitled to have experts examine the premises and machinery mentioned in this case.

We are therefore of the opinion that the circuit court had the power to make and enforce the order complained of, and that the same is just and reasonable, and in no manner injures or oppresses the relator.

The temporary writ heretofore issued from this court is quashed, and this proceeding is dismissed.

All concur, *Bond, J.*, in result only.