ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COM-
PANY *v.* DUFFEY.

## Opinion delivered February 21, 1916.

1. CARRIERS—INJURY TO PASSENGER—THREAT OF ARREST—JUMPING FROM
   MOVING TRAIN.—The operatives on defendant's train threatened to
   arrest plaintiff for an alleged violation of the law, when the train
   reached a certain city, the defendant will not be liable for injuries
   received by plaintiff, where he jumped from the same while the
   same was going so fast that an ordinarily prudent person would
   not attempt to alight therefrom.

2. CARRIERS—ALIGHTING FROM MOVING TRAIN—CONTRIBUTORY NEGLI-
   GENCE.—Unless the danger of alighting from a moving train is
   obvious, a passenger will be justified in relying upon the direction
   of those in charge of the train to alight, to the extent that he will
   not be guilty of contributory negligence as a matter of law.

3. CARRIERS—THREAT—ALIGHTING FROM MOVING TRAIN.—Some force or
   threat of bodily harm, or effort to eject a passenger must have
   been used before a passenger is justified in attempting to alight
   from a rapidly moving train.

4. CARRIERS—INJURY TO PASSENGER LEAVING A MOVING TRAIN—THREAT OF
   ARREST.—A mere threat by train officials, not accompanied by
   force, or by a threat of immediate bodily harm, to have plaintiff,
   a passenger, arrested upon reaching a certain city, will not justify
   plaintiff in jumping from a rapidly moving train.

5. CARRIERS—INJURY TO PASSENGER—LEAVING MOVING TRAIN—THREATS
   OF OFFICIALS OF DEFENDANT.—In order to justify a passenger in at-
   tempting to leave a rapidly moving train, on account of threats
   made by officials of defendant railway, there must be some show
   of force, threat of bodily harm, threat to eject him, or some over-
   bearing intimidation.

Appeal from Miller Circuit Court; *George R. Haynie,*
Judge; reversed.

### STATEMENT BY THE COURT.

Thomas Duffey sued the St. Louis, Iron Mountain
& Southern Railway Company to recover damages sus-
tained by him while a passenger on one of defendant's
passenger trains, alleging that his injuries were caused
by the negligence of the defendant and its servants.  The
plaintiff was a witness for himself and testified substan-
tially as follows:

I am thirty-one years of age and have lived in Hemp-
stead County, about thirteen miles from the town of Ful-

ton, all of my life.  On the morning I was injured, Wade
Cheatham and I came to Fulton and boarded the fast mail
train of the defendant for the purpose of going to Tex-
arkana.  The train did not stop between Fulton and Tex-
arkana.  We were going to Texarkana to look for some
cattle which had been stolen from me.  I had a pistol in
my pocket and had been told by the constable of my
township that I had a right to carry it under the circum-
stances.  Wade Cheatham had a bottle of whiskey in his
pocket.  When we got on the train we went into the toilet.
Wade Cheatham then put his bottle of whiskey down on
the floor but we had not drunk any of it after getting on
the train.  The auditor came into the toilet and demanded
our tickets.  He saw the bottle of whiskey and de-
manded that also.  Wade Cheatham gave him the bottle
of whiskey and he started out with it and threatened to
have us arrested if we did not get off the train.  He
asked us if we did not know that it was a violation of the
law to drink whiskey on the train.  We told him that we
had not been drinking it and he replied that it did not
make any difference and that he would have us arrested
in Texarkana, if we did not get off the train.  Later on
the auditor came into the coach where we were sitting.
He had a pistol.  The conductor and train porter were
also there.  They passed the pistol around among them-
selves and looked at us in a significant manner.  Both
Wade Cheatham and I went to different ones of the train-
men and told them our business at Texarkana, and tried
to persuade them not to have us arrested.  They insisted,
however, that they would have us arrested if we did not
get off the train before it arrived at Texarkana.  They
said they would slow the train down so we could get off.
Finally the train porter came and notified us that the train
had slowed down and that it was time for us to get off.
The train was just getting into Texarkana.  I was fright-
ened and followed the porter out of the coach and got
down on the steps of the car.  The vestibule door had
been opened before I got out there.  I stood a few minutes
on the second step and looked out.  The train was running
too fast for me to get off.  I thought I would go back into

the car but the man who took up our tickets came out there and placed his foot in my way. I was afraid to pass him and stood there on the step. I looked out to see a street car which was approaching and that is the last thing I remember. I believe I was knocked or pushed off the car. I did not recover my senses until about a week afterwards.

The plaintiff was severely injured and described the character and extent of his injuries. His testimony, in all essential respects, was corroborated by that of Wade Cheatham.

The train auditor admitted that he took the whiskey away from the negroes and threatened to have them arrested when the train arrived at Texarkana. He gave the bottle of whiskey to the conductor and he threw it out of the train.

The conductor and auditor were both old employees of the railroad company and denied that they had any altercation whatever with the plaintiff. They denied that they exhibited a pistol in his presence or that they even had a pistol. They said that they did not in any way intimidate him or try to force him to leave the train, and that they did not know that he was injured until after the train had arrived at Texarkana and they had left the station. They said they opened the vestibule doors as they approached Texarkana in accordance with their custom in order to enable passengers to alight as soon as the train stopped.

The train porter corroborated the testimony of the conductor and auditor. He denied that he told the plaintiff to leave the train and denied that he had any knowledge that he had done so until after he was injured.

Other witnesses who lived along the right-of-way in Texarkana testified for the railroad company and said that they saw the plaintiff standing on the lower step of the coach as if he were preparing to jump off the train. They testified that the vestibule doors were open on both sides and that they could not see anyone else on the step or near it.

The jury returned a verdict for the plaintiff and the defendant has appealed.

*E. B. Kinsworthy* and *R. E. Wiley*, for appellant.

1. It was error to refuse defendant's requests for instructions Nos. 11, 12 and 13. A mere threat to have a passenger arrested for alleged misdemeanor would not justify a passenger in exposing himself to obvious danger. The threat is not the proximate cause. 80 S. W. 121; 8 Am. St. 497; 57 Mo. App. 147; 14 L. R. A. 613; 30 S. W. 170; 55 Ark. 248; 57 Am. Rep. 114. It was negligence *per se* to alight from a train running from twelve to eighteen miles per hour. 58 Ark. 397; 45 *Id.* 256; 11 S. W. 212; 99 *Id.* 248; 83 Fed. 58; 37 L. R. A. (N. S.) 43 and note. There must be well grounded or reasonable apprehension of immediate impending danger. 55 Ark. 248-255; 14 L. R. A. 613; 37 L. R. A. (N. S.) 758, note; 80 S. W. 121; 67 Ark. 209; 1 Stark (Ky.) 493; 13 Pet. 181; 1 S. W. 493.

Plaintiff's instruction No. 1 was error. 80 S. W. 121, 123. There was no evidence of violence on part of the auditor.

3. No negligence was shown on part of defendant. 11 S. W. 212. Plaintiff was guilty of the only negligence. 20 L. R. A. (N .S.) 1123; 30 S. W. 170; 1 S. W. 493; 100 Pac. 641; 62 Am. Dec. 325. A verdict should have been directed for defendant.

4. There was reversible error in the argument of counsel. 87 Mo. 74; 71 Ark. 427; 65 *Id.* 619-626; 70 *Id.* 305.

*J. M. Carter,* for appellee.

1. There was nothing appellant was entitled to have said to the jury in the requests asked that was not given in the instructions for appellee, or in other instructions for appellant.

2. There is no error in instruction 1 for appellee and the testimony fully supports the verdict. 118 Ark. 39.

3. No prejudice resulted from the remarks of counsel. But if the remark was prejudicial it was invited

error. Besides the emphatic rebuke by the court and the withdrawal of the statement cured any prejudice.

HART, J., (after stating the facts). (1) Counsel for the defendant assigns as error the action of the court in refusing to give instruction No. 13. The instruction is as follows:

"If you believe plaintiff jumped from the moving train because defendant's train operatives threatened to have him arrested when he got to Texarkana, and further believe that the train was at the time he jumped off, going too fast for an ordinary prudent person to alight therefrom, in safety, your verdict should be for the defendant."

(2) We think the court should have given the instruction. Unless the danger of alighting from a moving train is obvious, a passenger will be justified in relying upon the direction of those in charge of the train to do so, to the extent that he will not be guilty of contributory negligence as a matter of law.

(3) It is equally well settled that some force or threat of bodily harm or effort to eject a passenger must have been used before a passenger is justified in attempting to alight from a rapidly moving train. In the case of *Little Rock & Ft. Smith Ry. Co.* v. *Atkins,* 46 Ark. 423, the court said:

"Whether it was culpable or excusable, depends on the rapidity of the motion, the fact whether it is day or night, the distance from the car to the ground or other surface upon which the passenger proposes to alight, the age and vigor of the party, and whether he takes the risk by the command or encouragement of the company's agents in charge of the train, or to escape a greater peril."

In the case of *Sibley, Receiver, et al.* v. *Smith,* 46 Ark. 275, the plaintiff claimed that he had been compelled by threats and intimidation on the part of the conductor to jump off a moving train. The principal question was as to the right to compel a personal examination of the plaintiff as to his personal injuries. The court reversed the

judgment because the injuries were of a permanent nature and the lower court refused to compel the plaintiff to submit to a medical examination. On the question now under consideration, the court said:

"It was not disputed that the plaintiff leaped from the train while it was in rapid motion. The court referred it to the jury, under appropriate instructions, to say whether he acted voluntarily, or from a fear, generated by the conduct of the conductor, that worse consequence might befall him if he attempted to remain in the car."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Rosenberry,* 45 Ark. 256, the plaintiff claimed that he was induced to jump from the train by the threats of the conductor to eject him, accompanied by a show of force. There the court said: "To be forcibly ejected from a moving train would, obviously, be attended with more danger than to leap from it, and if the appellee had been justified in the belief that he would be ejected if he did not go voluntarily or without force, no blame could be attached to his conduct. In such case the railroad, being the author of the original peril, would be answerable for the consequences."

(4) It follows from the principles announced in these opinions that the mere threat on the part of the train officials to have the plaintiff arrested when the train arrived at Texarkana was not enough to justify plaintiff in leaving the rapidly moving train. The mere threat to have him arrested, not accompanied by force or by a threat of immediate bodily harm, was not enough. The dictates of ordinary prudence are not to be disregarded and a mere threat of arrest, by whomsoever uttered, did not justify the plaintiff in incurring an obvious risk. The refusal of the court to give the instruction touching this phase of the case was prejudicial error.

The plaintiff testified that the train auditor threatened to have him and his companion arrested as soon as he discovered that they had a bottle of whiskey. The train auditor admitted this fact. It was also shown that the plaintiff had a pistol in his pocket, and it was the

theory of the railroad company that he was afraid he would be arrested for carrying a pistol and for that reason jumped off the train while it was moving rapidly. We think the railroad company had a right to have its contention presented to the jury in a concrete form. This is especially true when we consider that the instructions given at the request of the plaintiff were of a general character. The instruction given at the request of the plaintiff upon which he predicated his right to recover is as follows:

"If you find from a preponderance of the evidence that plaintiff was a passenger on one of defendant's trains, and that by reason of threats or any intimidation whatever the servants or any servant of the defendants engaged in the operation of the train so alarmed or terrified plaintiff as to induce him to put himself in a place of danger while the train was in rapid motion, and while in such place he was pushed or knocked off the train by any of said servants or while so there in the exercise of ordinary care for his own safety, he was jolted off by the movements of the train and injured, then you will find for the plaintiff."

(5)   It will be observed that the instruction is of a very general character and allows the plaintiff to recover if he put himself in a place of danger while the train was in rapid motion by reason of threats or any intimidation whatever. The plaintiff would not be justified in leaving a rapidly moving train by reason of a threat to have him arrested or even by the mere command of those in charge of the train. There must be some show of force, threat of bodily harm, threat to eject him, or some overbearing intimidation in order to make the company liable where the danger is evident.

Of course, as we have already seen, a passenger will be justified in relying upon the direction or command of those in charge of the train to alight from a slowly moving train while it is in motion, unless the danger of doing so is obvious. The reason for this is that the passenger has a right to rely upon the superior knowledge of the trainmen.

It is also earnestly insisted that there was no evidence to support the verdict. We are of the opinion, however, that the evidence of the plaintiff, if believed by the jury, was sufficient evidence to warrant the verdict.

For the error in refusing instruction No. 13, as requested by the defendant, the judgment must be reversed and the cause remanded for a new trial.